Johnny CLAUNCH, Appellant,

v.

Benny BENNETT, by and through his next friend, Louis Ray Bennett, Appellee.

No. 7515.

Court of Civil Appeals of Texas.

Amarillo.

Sept. 20, 1965.

Simpson, Adkins, Fullingim & Hankins, Amarillo, for appellant.

Gordon, Gordon & Buzzard, Pampa, Culton, Morgan, Britain & White, Amarillo, for appellee.

CHAPMAN, Justice.

This is an appeal by Johnny Claunch from a judgment based upon a jury verdict for Benny Bennett, a minor, by and through his next friend, Louis Ray Bennett, in which both ordinary and exemplary damages were awarded as a result of an automobile collision between the automobiles being driven by Claunch and Benny Bennett.

Johnny Claunch, with leave of the court, sought contribution and indemnity from John T. House, the driver of a third automobile Claunch collided with prior to the collision with appellee, Bennett.

Summary judgment was granted in favor of House for the reason that he had theretofor obtained a written release from Claunch.

■ Contention is made by appellant Claunch that the release is limited to only personal injuries or property damage incurred by him and does not release House for any suits for contribution or indemnity arising out of third party claims. We do not agree.

The release is very broad in scope and is titled, "Release of All Claims." The instrument is included on the last page in verbatim form of Mr. House's brief. It provides in part that John T. House is released " * * * from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever which the undersigned has/have or which may hereafter accrue on account of or in any way growing out of any and all known and unknown, foreseen and unforeseen bodily and personal injuries and property damage and the consequences thereof resulting or to result from the accident, casualty or event." Then typed in at the bottom of the release was a provision that: "This instrument does not release any subrogation claim with my collision carrier." A study of the release from its four corners convinces us that both the wording of the instrument and the intention of the parties shows a release by Johnny Claunch of all claims of any nature whatsoever which the latter might then have or which, might accrue thereafter against Mr. House, including any cause he might have for contribution or indemnity.

We hold the summary judgment for John T. House was properly granted.

The other seven points of error complain of the trial court's action in entering judgment for appellee for the reasons that there was no evidence, or alternatively, insufficient evidence, to support a finding of gross negligence in the sum of $1,000; that a judgment of $5,000 actual damages was against the great weight and preponderance of the evidence and that counsel for appellee committed reversible error in his jury argument. The points are all argued together and we shall attempt to so discuss them.

Appellant's principal contention that gross negligence was not raised is based upon his theory that the speed race he entered into with a second party within the city limits of Pampa upon a busy street, which was also Highway 70, was without premeditation; was purely upon the spur of the moment; took place within a matter of a few seconds; and the sole act of negligence committed by him was excessive speed.

Appellant shows from the record to have been shortly under thirty years of age at the time of the collision and divorced. He had been to the Coronado Inn in Pampa during the evening and just before the collision had picked up Donna Hyland, who maintained a room there, and a fellow by the name of Glenn, whom he invited to go to the bowling alley with them. Though not intoxicated, he had partaken of a mixed drink at his evening meal and later a beer by his own admission. The record does not show when he finished his evening meal nor what period had elapsed from the time he drank the beer until the collision, which Claunch testified occurred " * * * between ten and eleven, nine and eleven, somewhere in that vicinity." He was driving a comparatively new Sports Fury Plymouth capable of high speed " * * * that Plymouth would run between 90 and 100 in a quarter of a mile."

After leaving the Coronado Inn he stopped at a stop sign at the intersection of Hobart and Frederic Streets, then turned onto Hobart, which is also Highway 70. At this time an acquaintance pulled up beside him and the two men engaged in a race with their machines. During the race John T. House backed his car out onto Hobart Street from his private driveway approximately one-half of a mile away from where the race began. Claunch noticed

the House car backing out but continued his excessive speed until it backed into his lane, the left lane going south on a four-lane street and highway. At the time he saw Mr. House backing out he had reached his maximum speed but kept speeding until Mr. House backed into his lane.

At approximately the same time appellee, Benny Bennett, then a sixteen-year old high school boy, had turned off McCullough Street onto Hobart after taking his girl friend home and was driving on his proper side of the highway between twenty and twenty-five miles per hour. He testified after about a block " * * * all of a sudden it (the Claunch car) was upon me; I didn't know what to do or nothing; I don't remember what I did. The next thing I remember I was home in bed. That is when I woke up the next morning." All parenthetical statements herein are ours.

The ambulance had taken Benny to the hospital but according to his treating physician he was under shock. The doctor had given him treatment and let his mother take him home.

Claunch was not present at the trial but testified by deposition that his car " * * * would run between 90 and 100 in a quarter of a mile." He also testified that if he didn't reach 90, it was because he didn't travel enough space.

The investigating police officer's estimate of the distance travelled from the intersection of Frederic and Hobart was one-half mile before the collision. Therefore, we believe under the record we would have to assume he reached approximately his maximum potential speed, which would have been more than 90 miles per hour because Claunch testified " * * * that Plymouth would run between 90 and 100 in a quarter

of a mile," and that when the race started " * * * I stomped mine." The competing car gave up in about a block and a half but even after it pulled off to the right Claunch continued to accelerate. "I'd say I was still accelerating."

A considerable amount of law concerning gross negligence has been written in this state in cases involving the Guest Statute, Article 6701b, V.T.C.S.[1] In some of these cases language has been used indicating that negligent acts relied on to constitute gross negligence must show a continuous course of action to constitute gross negligence.[2]

It is from some of this language that appellant seeks relief from the gross negligence judgment against him, on the theory that the act of speeding which caused the collision was a spontaneous short-time burst of speed which did not represent a deliberate course of action. It is true that in Rogers v. Blake, supra, and in Adams v. McHam, supra, those opinions in quoting from other cases said: "[T]here must be something in the nature of a continued or persistent course of action." However, the court in Rogers v. Blake said " * * * [T]he law is that there must be a 'heedlessness and reckless disregard of the rights of others', which a conscious failure to stop, standing alone, does not show."

Justice Garwood in dissenting from the majority in the case just discussed stated:

"Now it is difficult for me to conceive of anything more 'persistent' than the act of a driver who approaches a thoroughfare guarded by stop signs, knowing it in advance to be so guarded, and then (as there was ample reason to believe) deliberately crosses without stopping at such speed that the resulting

---

1. Rowan v. Allen, 134 Tex. 215, 134 S.W. 2d 1022 (Com.App. opinion adopted); Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194; Kirkpatrick v. Neal, Tex. Civ.App., 153 S.W.2d 519 (writ refused); Bowman v. Puckett, 144 Tex. 125, 188 S.W.2d 571; Bernal v. Seitt, 158 Tex. 521, 313 S.W.2d 520; Rogers v. Blake, 150 Tex. 373, 240 S.W.2d 1001.

2. Rogers v. Blake, supra; Adams v. Mc-Ham, Tex.Civ.App., 310 S.W.2d 145 (N. R.E.).

collision with a car on the thoroughfare violently throws his three guests out of his closed car, as well as throwing one passenger out of the other closed car. If that is not 'persistent', then it is also not persistent deliberately to aim a pistol at another and pull the trigger. But be that as it may, we have never clearly held and should not hold it to be a necessary condition of gross negligence, that at some time or other prior to the accident the defendant must have been doing the same kind of negligent acts that caused the collision—or perhaps similar kinds of negligent acts."

\*    \*    \*    \*    \*    \*

"A single act of deliberate misconduct might well come within the phrase 'something in the nature of a continued or persistent course of action' and is clearly distinguishable from inadvertence, which means the absence of intent."

A more recent case by our Supreme Court since Rogers v. Blake would seem to foreclose appellant's contention against him under the facts of the instant case even if he could find comfort in the case just mentioned. That case is Fancher v. Cadwell, 159 Tex. 8, 314 S.W.2d 820. Here both the trial court and Court of Civil Appeals held gross negligence did not exist, apparently because the gross conduct was not of sufficient duration. The Supreme Court reversed and rendered.

In refuting the "continuous course of action" theory before one could be found to have been guilty of gross negligence the court in Fancher v. Cadwell, said:

> "*Apparently it was the trial court's theory that gross negligence, which was found by the jury to exist, cannot be the basis for the recovery of damages for the reason that the evidence fails to go further and show that the gross conduct was of sufficient duration from the standpoint of time*. The findings and conclusions specifically referred to

herein seem to indicate that this matter of only a few minutes time elapsing between the moment of petitioner's entry into respondent's automobile and the time of the collision was the determining factor in the trial court's mind in entering the judgment non obstante veredicto. The judgment of the Court of Civil Appeals affirming that of the trial court has for its basis the conclusion as was reached in Rogers v. Blake, supra, that the acts which the jury found as being gross negligence were mere acts of inadvertence and of mistaken judgment, and that there were no facts or circumstances which would justify the inference that the respondent's conduct was grossly negligent. With this conclusion we cannot agree. \* \* \* the courts have been primarily concerned with the quality or kind of conduct established by the evidence in each given case and have adhered to the rule that whether conduct is so far negligent or wanton, reckless or willfully improper as to render one liable under· the guest statute depends upon the combination of circumstances present at the particular time and place. *In none of the decisions has it been held that the period of time during which negligent conduct existed was the sole criterion for gross negligence*." (Emphases ours.)

These quotes from Fancher v. Cadwell, supra, some of the latest supreme judicial expressions in Texas, appear to us to convict appellant from the facts in this case.

The reason for the spontaneity of the extremely excessive speed ceased when the adversary speeding driver abandoned the race. Yet, Claunch admitted: "I'd say I was still accelerating."

Being a resident of Pampa he would have to have been conscious of the fact that he was speeding on not only a state highway but on an extensively travelled city street which the testimony shows was intersected by many other city streets and along an area

where residences existed from which automobiles would have backed out of their driveways. Since he testified the sports car would run " * * * between 90 and 100" in a quarter of a mile; that he "stomped" (his accelerator); that if he did not reach 90 miles per hour it was because he didn't travel enough space; and since the record shows he travelled approximately one-half mile, still accelerating while he saw a car backing out of a driveway down the street he was travelling until the car had backed into his lane of traffic without using his brakes until he was 105 feet from such car, it is difficult for us to conceive of a more conscious indifference to the rights or welfare of the persons to be affected by such acts.

When he did finally apply his brakes he was travelling at such speed his car started to spin; collided with the House car; went into a skid down the wrong side of the road and continued to skid for 53 additional feet before striking the Bennett car. Even then the car was still skidding so out of control from the excessive speed that Claunch testified he would have turned over had he not struck appellee's car.

We believe that the inference properly to be drawn "from what the actor (Claunch) did and the physical facts that existed at the time and that contributed to the accident" must be found to have constituted gross negligence, which was defined by the court to be " * * * that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the rights or welfare of the person or persons to be affected by it." Fancher v. Cadwell, supra.

Since we are of the firm conviction that the conduct of appellant constituted gross negligence, the jury argument in connection therewith does not in our opinion show reversible error.

In connection with submitted issues on gross negligence, the court told the jury they might in their discretion award, in addition to any actual damages they might have found, an amount which they might decide as a matter of punishment and as an example to others. The argument of counsel complained about was not improper, therefore, in telling the jury, in effect, that exemplary damages could be awarded as a matter of punishment and as an example to others. Our Supreme Court has said that such type damages are " * * * punishment for the gross negligence alleged as the basis of the suit." Bennett v. Howard, 141 Tex. 101, 170 S.W.2d 709. In any event, under Rule 434, V.A.T.R., such argument was harmless error.

The next contention urged by appellant is that an award of $5,000 actual damages was excessive.

The medical testimony shows Benny Bennett had discomfort of the left knee following the collision, with considerable swelling, and apparently fluid in the joint. He was on crutches for several weeks and his knee was later diagnosed by Dr. Elias Margo of Oklahoma City, whom the testimony shows was a highly trained specialist in the field of orthopedic surgery and an author of several books on the subject. He stated: "My impression was that this young man had an internal derangement of the left knee involving the medial meniscus and a tear in the capsule of the joint." The condition would require surgery to correct and he still would have some degree of weakness. The cost estimated by the doctor would be from $350 to $450 for surgery and hospitalization. The doctor stated that occasionally, on getting inside the knee with surgery, it is discovered that there is damage to the lateral ligaments and that if such should be found in Benny's knee there would be greater disability.

Benny was not a good student, his time out of school due to the collision caused him to get so far behind with his school work that he quit school and the record indicates he is one of the unfortunate school "dropouts." At the time of trial he had been

working in a filling station and his testimony shows that even while walking his knee would have a popping or locking sensation at times with a resulting sharp pain as if " * * * Here's a bone and there's another bone just popping off the end of it."

In determining whether an award of damages by a jury is excessive, we believe each case must stand on its own facts and that the same loss occurring to different individuals obviously differ in effect as to the amount of damages, dependent upon each individual's mental aptitude and the effect his injuries would probably have upon his future earning capacity.

A study of this case does not, in our opinion, indicate any passion or prejudice on the part of the jury in awarding $5,000 actual damages for this boy with a life expectancy of 48.44 years when we consider, as we must from the record, he is destined to earn his living by physical effort, which the jury could and probably did believe would be impaired by his knee injury.

The case appears to have been fairly and properly tried as to all parties and the judgment is accordingly affirmed.