**NORTH HOUSTON POLE LINE CORP.,
et al., Appellants,**

v.

**Terry Rachal McALLISTER, Appellee,**

**No. A14–82–890CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 22, 1983.

Rehearing Denied Jan. 19, 1984.

Alice M. Giessel, Henry P. Giessel, Talbert, Giessel, Stone, Barker & Lyman, Houston, for appellants.

Hal Upchurch, John O'Quinn & Associates, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and DRAUGHN and ELLIS, JJ.

## OPINION

ELLIS, Justice.

Appellants, North Houston Pole Line Corp., et al., appeal an automobile accident personal injury judgment against them in favor of appellee, Terry McAllister. The trial court submitted issues to the jury on actual damages and punitive damages, including an issue on the gross negligence of North Houston Pole Line Corp. The jury found $245,288.88 actual damages, $50,000 punitive damages against appellant, Benton, the driver, and $250,000 against appellant, North Houston Pole Line Corp., his employer. We agree and affirm.

Appellants bring nineteen points of error on appeal. Points of error eleven through nineteen relate to the trial court's judgment of actual damages. Points of error eleven, twelve and thirteen allege that 11) there was no evidence to support submission of an issue to the jury on loss of future earning capacity; 12) there was no evidence to support the jury verdict of $72,000 on that issue and; 13) because the evidence on that issue was insufficient, the excessive jury award must have resulted from passion, prejudice or other improper motive and this court should order remittitur.

Points of error fourteen through nineteen complain of insufficient evidence to support the excessive jury award, and therefore, jury passion, prejudice or other improper motive and call for remittitur on the issues of: 14) past physical pain and mental anguish, 15) future physical pain and mental anguish, 16) past loss of earnings, 17) past physical impairment, 18) future physical impairment and 19) future medical expenses.

Points of error one through six relate to the judgment of punitive damages against North Houston Pole Line Corp. Point of error one complains that there was no evidence to support submission of a jury issue on gross negligence. Point of error two alleges that there was no evidence to support the jury's response to that issue of $250,000 exemplary damages. Point of error three complains about the way this issue was worded. Appellants claim that the conjunctive language of negligent hiring *and* negligent entrustment resulted in an improper jury finding. Point of error four calls for an issue on whether North Houston Pole Line Corp., in the exercise of ordinary care, should have known that Benton was an incompetent driver. Points of error five and six complain that the evidence was factually insufficient to support a finding of gross negligence, and that therefore, the excessive jury verdict resulted from passion, prejudice or other improper motive and this court should order remittitur.

Finally, points of error seven through ten relate to the judgment of punitive damages against Benton, the driver and employee of North Houston Pole Line Corp.: 7) that the trial court erred in submitting an issue on Benton's gross negligence; 8) that there was no evidence to support the jury's verdict of $50,000 in response to this issue; 9) that the evidence was factually insufficient to support this jury finding and; 10) that this verdict resulted from passion, prejudice or other improper motive and this court should order a remittitur.

Earl Benton was hired by North Houston Pole Line Corp. on February 17, 1981. North Houston claimed that it hired Benton as a manual laborer and later promoted him to driver. Benton, however, testified that he was hired as a driver and that position was the main reason he went to work for North Houston Pole Line Corp. Before he was hired, Benton was interviewed by Earl Austin. Benton did not remember if Austin asked him about his experience of qualifications for driving a truck, or whether Austin asked to see his driver's license. Austin did not ask if Benton had any traffic tickets. Benton said he

had driven a truck for Hofler Furniture Rental for four months.

In fact, Benton only worked for Hofler two months, never drove a truck for them and had received at least five speeding tickets in the previous year and a half. Benton's only truck driving training was self-taught.

About one week after Benton began driving a truck for North Houston Pole Line Corp., during rush hour, Benton, going about 50 miles per hour, drove North Houston's 9,000 pound truck with a trailer loaded with telephone poles into the rear of Appellee Terry McAllister's car. Just before the accident, Benton drove over a hill, created by a loop 610 overpass, about 3/10 of a mile away from where appellee and other cars had stopped for traffic. Benton, instead of stopping or slowing, began to try to change lanes. About ten feet before he collided with the car behind appellee, Benton tried to swerve across two lanes, from the lane to appellee's left to the open lane on her right. Benton hit the car behind appellee's and knocked it across two lanes and off the freeway. Benton then hit appellee's car and knocked it into another lane. Benton was issued a traffic ticket for negligent collision. Appellee's personal injuries included two cracked teeth, four cracked fillings, injuries to cervical muscles and the seventh cervical nerve, which required two hospitalizations, EMG testing, a myelogram, physical therapy, traction and medication for pain and muscle relaxation. She still has pain in her neck, right arm and forearm and numbness and weakness in her hand, which impairs movement and limits her ability to lift objects. The accident caused her to lose two jobs and has reduced her employment potential from a computer librarian to a receptionist.

After the accident, Benton claimed that his brakes had failed. He testified that a mechanic from North Houston Pole Line Corp. had fixed the brakes at the accident scene, but the mechanic testified that the brakes had worked fine and that he drove the truck back to the shop without difficulty. The investigating officer testified that there was no brake failure.

Benton admitted that he did not know how much his truck and trailer weighed empty or loaded or how long it would take to stop it; however, he admitted that this information would be crucial to driving the truck safely.

Austin, who hired Benton, gave conflicting answers when asked if he would have let Benton drive if he had known about Benton's speeding tickets. On deposition, he said he would not have let Benton drive. At trial, he said he would have let Benton drive 1) if the tickets were not recent (Benton's five tickets had all been received during the past year and a half), 2) because the trucks were too large to speed and 3) because it is hard to find drivers with commercial licenses. Austin let Benton drive again after the accident without giving him a road test, because he believed an accident is not serious unless someone is run over or a driver is charged with drinking.

Generally, we will not disturb a jury finding based on the ground of excessiveness if there is any probative evidence to support the award. *T.J. Allen Distributing Co. v. Leatherwood,* 648 S.W.2d 773 (Tex.App.—Beaumont 1983, writ ref'd n.r.e.). The appellate court will not substitute its judgment for that of the jury unless the record indicates the award resulted from the jury's passion, prejudice or improper motive. If, after reviewing the evidence, the court finds the award so excessive as to shock the conscience of the court, a remittitur is proper. *International Harvester Company v. Zavala,* 623 S.W.2d 699 (Tex. Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.); *Armellini Exp. Lines of Florida v. Ansley,* 605 S.W.2d 297 (Tex.Civ. App.—Corpus Christi 1980, writ ref'd n.r. e.).

■ Points of error eleven, twelve and thirteen complain about the jury's finding of $72,000 actual damages for loss of future earning capacity. Appellants allege that there was no evidence to support the submission of this issue to the jury and that the evidence was insufficient to support the jury's finding. We disagree. Appellee's doctor testified that she would con-

tinue to have problems with pain and numbness in her neck and arm related to her degree of activity. Appellee's injuries prevented her from working as a computer librarian, her previous job at which she made $11,400 a year. She was still able to work as a receptionist making more than $1,800 less per year. She was unemployed at the time of trial and there was no assurance that she would get a receptionist job within the foreseeable future or that she would retain such a job.

At 27 years old, appellee had a work-life expectancy of 38 years (until age 65). The evidence was sufficient to support the jury finding of $72,000 for loss of future earning capacity. ($72,000 divided by 38 years = $1,895 per year). We overrule points of error eleven, twelve and thirteen.

■ Points of error fourteen and fifteen allege that the evidence was insufficient to support the jury findings for past and future suffering and mental anguish. Appellee's doctor testified that she was hospitalized twice and had to undergo traction and many painful and dangerous tests. Even after she went back to work, she still had pain in her shoulder, right arm and hand. It was painful for her to lift things and drive a car. The doctor testified that she would continue to have pain in her neck, shoulder and right arm and numbness in her right hand. He said it would improve to some degree but she would continue to have problems for some time. Dr. Rashti testified that appellee had suffered cervical whiplash and nerve injury.

Damages for pain, suffering and mental anguish are peculiarly a jury question because they are difficult to assess. *City of Houston v. Moore,* 389 S.W.2d 545 (Tex. Civ.App.—Houston [1st Dist.] 1965, writ ref'd n.r.e.). For this reason, this court will not substitute its opinion for the jury finding unless the damages are so irrational or excessive as to shock its conscience. *Bill Hendrix Auto Parts v. Blackburn,* 433 S.W.2d 237 (Tex.Civ.App.—Houston [14th Dist.] 1968, no writ).

The award of $20,000 was based on one and one-half years of past pain, suffering and mental anguish. The award of $50,000 was based upon pain, suffering and mental anguish for appellees 52.4 additional years life expectancy, an award of less than $1000 per year. On the record of this case, $70,000 for past and future pain, suffering and mental anguish is a reasonable award. We overrule points of error fourteen and fifteen.

■ Point of error sixteen alleges that the evidence was insufficient to support the jury's finding of $7,100 for past loss of earning capacity. Appellants allege that appellee is entitled only to $1,300 in past lost earnings. The jury, however, evaluated past lost *earning capacity,* not merely lost earnings. Appellee lost wages from her two jobs of approximately $1,300. Furthermore, she was unemployed for several months, during which she could have earned $800 per month. In addition, her salary capability was reduced from that of a computer tape librarian to that of a receptionist. The evidence showed this total loss in excess of $8,000; therefore, the jury finding of $7,100 was reasonable. We overrule point of error sixteen.

■ In points of error seventeen and eighteen, appellants claim that the evidence was insufficient to support a jury finding of $60,000 for past and future physical impairment. Appellee testified that any activity increased the pain and problems she had with her right arm and hand. Her doctor testified that these problems, attributable to the injury, would continue, related to the degree of her activity. Considering her life expectancy of 52.4 years, the jury's award for physical impairment represents $3.14 per day, a reasonable figure. We overrule points of error seventeen and eighteen.

■ Point of error nineteen alleges that the evidence was insufficient to support the jury's finding of $30,000 for future medical expenses. Dr. Rashti estimated that appellee would require continued medical care on an annual basis of $800 to $1,000 a year. With a life expectancy of 52.4 years at $1,000 per year, the jury could have award-

ed her over $50,000, but actually awarded only $30,000.

■ Appellants argue that future medical expenses are too indefinite as to time and amount. A jury, however, may award future medical damages based on the nature of the injury, the medical care received before trial and plaintiff's condition at trial. *Brown v. Friedman*, 451 S.W.2d 588 (Tex. Civ.App.—Houston [1st Dist.] 1979, no writ). The doctor testified to an amount in excess of the jury's award; therefore, the award of $30,000 is supported by sufficient evidence. We overrule point of error nineteen.

Points of error one through six complain about the judgment of $250,000 punitive damages against North Houston Pole Line Corp. Appellants allege that there was no evidence to support submission of a jury issue on gross negligence (legal insufficiency), that the evidence was factually insufficient to support the jury's response to that issue, and that the damage award is excessive. Under each of these challenges, appellants must meet a different burden:

1) In a legal insufficiency claim, appellant, focusing on the evidence favorable to the jury finding and ignoring all contrary evidence, must demonstrate that there is no evidence to support the jury's finding. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965);

2) In a factual insufficiency claim, appellant must prove to the appellate court that considering *all* of the evidence, the jury's verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, [150 Tex. 662] 244 S.W.2d 660 (1951).

3) In an excessive damage challenge, appellant, using the same test as in a legal sufficiency challenge, must show that the award is so excessive that it shocks the conscience of the court. *International Harvester Co. v. Zavala*, 623 S.W.2d 699 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.); *Armellini Exp. Lines of Florida v. Ansley*, 605 S.W.2d 297 (Tex. Civ.App.—Corpus Christi 1980, writ

ref'd n.r.e.). The only evidence to be examined in a remittitur point is the evidence which supports the jury's verdict. *Armellini*, 605 S.W.2d at 310.

■ Appellants failed to meet each of these burdens. The jury's finding of North Houston's gross negligence is supported by the evidence. First, Tex.Rev.Civ.Stat.Ann. art. 6687b, § 37 (Vernon Supp.1982–83) required North Houston to examine Benton's driving record:

Before employing a person as a chauffer or commercial operator of a motor vehicle, an employer shall request from the Department of Public Safety a list of convictions for traffic violations contained in their files on the potential employee and a verification that potential employee has a valid license ...

Austin, who hired Benton, admitted that he did not check Benton's record; furthermore, he said he did not even know how to get an employee's driving record. He did not even ask to see Benton's commercial driver's license. Second, North Houston did not check Benton's employment record. If it had, it would have discovered that Benton lied about his truck driving experience. In *Wilson N. Jones Memorial Hospital v. Davis*, 553 S.W.2d 180 (Tex.Civ. App.—Waco 1977, writ ref'd n.r.e.), the court affirmed a finding of gross negligence because the hospital endangered lives by failing to check an employee's employment record. North Houston similarly endangered the lives of others. Third, North Houston did not test Benton's driving skills or train him to drive its truck. Finally, Austin allowed Benton to continue driving after the accident and after he knew about the tickets because he did not believe the accident was serious and because drivers with commercial licenses were hard to find.

■ The evidence was sufficient to support the jury's finding of gross negligent entrustment against North Houston Pole Line Corp. Furthermore, appellants are not entitled to a remittitur. The size of the punitive damage award is not exces-

sive. Generally, in order to determine whether a punitive damages award is excessive, courts have compared punitive damages to actual damages. In our case the actual damages were $245,288 and the punitive damages against North Houston were $250,000, a ratio of just over one to one, courts have affirmed punitive damages of: 19 to 1, *Alamo Nat. Bank v. Kraus,* 616 S.W.2d 908 (Tex.1981) and 14 to 1 *Bond v. Joshua,* 416 S.W.2d 523 (Tex.Civ. App.—Amarillo 1967, no writ); *Carter v. Barclay,* 476 S.W.2d 909 (Tex.Civ.App.— Amarillo 1972, no writ). In order to establish that a remittitur is required, appellants must either point to passion or prejudice in the record or show by comparing the evidence to the award that the award itself shows prejudice. Appellants have not shown either. We overrule points of error one, two, five and six.

■ Points of error three and four complain about the form in which the court submitted the gross negligence issue. In point of error three, appellants claim that the trial court erred in the wording of Special Issue No. 4 to the jury. The issue, as submitted, read as follows:

Do you find from a preponderance of the evidence that the conduct of North Houston Pole Line Corp. regarding the hiring of Earl Brady Benton and permitting him to use the vehicle was a heedless and reckless disregard of the rights of others affected by it?

Appellants object to the conjunctive phrasing of "regarding the hiring" and "permitting him to use the vehicle". They claim that hiring him could not have been gross negligence that was causal to the accident because he was hired as a laborer. Benton, however, testified that he was hired as a driver and that this position was the main reason he took the job. The conjunctive phrasing was not in error.

■ Furthermore, in point of error four, appellants complain that the court should have asked the jury separately if, in the exercise of ordinary care, it should have known that Benton was an incompetent driver. First, appellant had a statutory duty to investigate Benton's driving record. Tex.Rev.Civ.Stat.Ann., art. 6687b, § 37 (Vernon Supp.1982–83). This statute imposed a duty to know. Second, Tex.R. Civ.P. 277 as amended in 1973 permits submission of broad issues:

It shall be discretionary with the court whether to submit separate questions with respect to each element of the case or to submit issues broadly. It shall not be objectionable that a question is general or includes a combination of elements of issues.

We overrule points of error three and four.

■ Points of error seven through ten relate to the judgment of $50,000 against Benton for gross negligence. Appellants complain that there was no evidence to support submission of the issue of Benton's gross negligence (legal insufficiency), that there was no evidence or insufficient evidence to support the jury's finding that Benton was grossly negligent (factual insufficiency) and that the punitive damage judgment of $50,000 against Benton was so excessive that it was the result of passion, prejudice or other improper motive. The appellants, when faced with the same burdens with respect to Benton that the faced with respect to North Houston, again fail to meet those burdens. The jury finding of Benton's gross negligence was supported by the evidence. Benton's lies about his employment history and driving experience resulted in his driving a truck he was not qualified to drive and in injuries to others. The jury had sufficient evidence to find that he acted in reckless disregard for the safety of others. Furthermore, we decline to order a remittitur. The punitive damage judgment against Benton was not excessive. We overrule points of error seven, eight, nine and ten.

Accordingly, we affirm the judgment of the trial court.