Renee McCracken WILLIAMS et al., Petitioners,

v.

STEVES INDUSTRIES, INC., d/b/a Ingram Equipment Company, Respondent.

No. C–3666.

Supreme Court of Texas.

Nov. 13, 1985.

Long, Burner & Cotten, Larry Parks and Tom Long, Austin, for petitioners.

Huson, Clark, Hooks, Stephenson & O'Connor, Hobart Huson, Jr., San Antonio, for respondent.

CAMPBELL, Justice.

This case arises from a collision of a truck owned by Steves Industries and a car driven by Renee McCracken Williams. Mrs. Williams was injured and her two minor children were killed in the accident. Mrs. Williams and her husband, Kenneth Williams, sued Steves Industries for personal injuries Mrs. Williams suffered as well as wrongful death and survival actions for the deaths of their two children. Tex. Rev.Civ.Stat.Ann. art. 4671 (Vernon Supp. 1984) (Wrongful Death Act); Tex.Rev.Civ. Stat.Ann. art. 5525 (Vernon 1958) (Survival Act). The Williamses alleged that Steves Industries was negligent and grossly negligent in allowing its employee, Robert Robinson, to drive the truck. The jury found Steves Industries both negligent and grossly negligent and awarded $250,000 in punitive damages. The trial court disregarded the jury's findings of gross negligence and limited the award to actual damages. The court of appeals affirmed the judgment of the trial court in part and reversed and rendered in part. 678 S.W.2d 205 (Tex. App. 3 Dist.1984). We affirm the judgment of the court of appeals.

On July 30, 1981, Mrs. Williams was driving her car on a four-lane segment of Interstate 35 in Austin. Her two children were riding in the back seat. The car ran out of gas and stalled in one of the center lanes. Mrs. Williams restarted the car but continued only a short distance before it stalled again. There was testimony the car was hidden from the view of approaching traffic by shadows of an overpass. Robinson, who was driving an eight-ton equipment repair truck owned by Steves Industries, hit Mrs. Williams' car from behind. Mrs. Williams and her children were injured and the children died from those injuries.

The Williamses seek to recover punitive damages under a theory of negligent entrustment. The Williamses argue there is some evidence to support the jury's finding that Steves Industries was grossly negligent in entrusting the truck to Robinson. The elements of negligent entrustment are: (1) entrustment of a vehicle by the owner; (2) to an unlicensed, incompetent, or reckless driver; (3) that the owner knew or should have known to be unlicensed, incompetent, or reckless; (4) that the driver was negligent on the occasion in question; and (5) that the driver's negligence proximately caused the accident. *Mundy v. Pirie-Slaughter Motor Co.*, 146 Tex. 314, 206 S.W.2d 587, 591 (1947).

■ Punitive damages may be awarded against the owner of a vehicle if the driver was unfit and the owner was grossly negligent in entrusting the vehicle to the driver. *Montgomery Ward and Co. v. Marvin Riggs Co.*, 584 S.W.2d 863 (Tex.Civ.App.—Austin 1978, writ ref'd n.r.e.); *See North Houston Pole Line Corp. v. McAllister*, 667 S.W.2d 829 (Tex.Civ.App.—Houston [14th Dist.] 1983, no writ); *Webster v. Carson*, 609 S.W.2d 850 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ); *Southwestern Bell Telephone Co. v. Davis*, 582 S.W.2d 191 (Tex.Civ.App.—Waco 1979, no writ); *Cf. King v. McGuff*, 149 Tex. 432, 234 S.W.2d 403 (1950) (punitive damages for negligent hiring recoverable if agent was unfit and the principal was reckless in employing him).

The act of negligence in this case was allowing Robinson to drive the equipment repair truck. Our question is whether there is some evidence of gross negligence. In answering this question, we review the law of other states and Texas law.

Courts in other jurisdictions use a wide variety of language to describe conduct constituting gross negligence. Tests for gross negligence fall into two general catagories. These tests are distinguished by the importance placed on the mental attitude of the defendant. Some courts define gross negligence as conduct which exhibits "an entire want of care." Annot. 98 A.L.R. 267, 268. These courts attempt to distinguish gross negligence as being different in degree from ordinary negligence. W. Keeton et al., *Prosser and Keeton on the Law of Torts*, § 34 at 212 (5th ed. 1984). Other courts define gross negligence as "reckless disregard for the rights and safety of others." Annot. 98 A.L.R. 267 at 269. This test focuses on the nature and quality of the conduct requiring that the defendant be conscious of a very high degree of risk. *Prosser and Keeton, supra*, § 34 at 212–13.

Most states that have used the "entire want of care" definition have applied the elements required under the "reckless disregard" test. *Williamson v. McKenna*, 223 Or. 366, 354 P.2d 56 (1960). As a result the two definitions have tended to merge "and take on the same meaning, of an aggravated form of negligence, differing in quality rather than degree from ordinary lack of care." *Prosser and Keeton, supra*, § 34 at 214. Regardless of the language, in almost all jurisdictions the distinguishing factor between negligence and gross negligence is the degree of risk of which the defendant was aware or should have been aware:

Although, with some exceptions, there is no precise uniformity among the terms used by all jurisdictions to describe the character of the conduct on the part of a defendant which will justify a punitive or exemplary damage award, an analysis of the authorities clearly indicates a conceptual uniformity among all jurisdictions. The conduct which the varying terms are used to describe is generally of two distinct types. The first type is that in which the defendant desires to cause the harm sustained by the plaintiff, or believes that the harm is substantially certain to follow his conduct. With the second type of conduct the defendant knows, or should have reason to know not only that his conduct creates an unreasonable risk of harm, but also that there is a strong probability, although not a substantial certainty, that the harm will result but, nevertheless, he proceeds with his conduct in reckless or conscious disregard of the consequences. Neither form of conduct, therefore, involves mere inadvertance or what, in the traditional tort sense, would be called ordinary negligence.

J. Ghiardi and John J. Kircher, *Punitive Damages: Law and Practice*, § 5.01 (rev. 1984).

■ The Texas definition of gross negligence is, "that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it." *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 920 (Tex.1981). The Texas def-

inition is a hybrid definition, distinctive to this state and unusual by comparison to the law of other states. It combines both of the traditional tests for gross negligence. Comment, *Exemplary Damages for Gross Negligence: A Definitional Analysis*, 33 Baylor L.Rev. 619, 622 (1981). Until our decision in *Burk Royalty Co. v. Walls*, this court most often emphasized the "entire want of care" element of the definition of gross negligence. *See Burk Royalty*, 616 S.W.2d at 916–19. We defined "entire want of care" as a negative absolute-the absence of any care. *Id.* In addition, we used the "some care" standard to review a no evidence point. *Id.* at 918–19. Since *Burk Royalty* we have continued to emphasize the "conscious indifference" component. *International Armament Corp. v. King*, 686 S.W.2d 595 (Tex.1985); *Trenholm v. Ratcliff*, 646 S.W.2d 927, 933 (Tex. 1983).

■ We held in *Burk Royalty* that the defendant's state of mind distinguishes gross negligence from negligence; however, we also recognized that a test requiring the plaintiff to prove gross negligence by direct evidence of a defendant's subjective state of mind would leave outrageous conduct unpunished. Therefore, we held that "[a] mental state may be inferred from actions. All actions or circumstances indicating a state of mind amounting to a conscious indifference must be examined in deciding if there is some evidence of gross negligence." *Burk Royalty*, 616 S.W.2d at 922. We reaffirm our holding in *Burk Royalty* that the plaintiff need not prove the defendant's subjective state of mind by direct evidence.

■ Thus, the test for gross negligence is both an objective and a subjective test. A plaintiff may prove a defendant's gross negligence by proving that the defendant had actual subjective knowledge that his conduct created an extreme degree of risk. In addition, a plaintiff may objectively prove a defendant's gross negligence by proving that under the surrounding circumstances a reasonable person would have realized that his conduct created an ex- treme degree of risk to the safety of others.

No exact line can be drawn between negligence and gross negligence. However, the character of the actual act required is determined by the terms used to define gross negligence: "conscious indifference" denotes a decision, in the face of an impending harm to another party, to not care about the consequences of the act which may ultimately lead to that harm. *Burk*, 616 S.W.2d at 922; *Ogle v. Craig*, 464 S.W.2d 95 (Tex.1971). If the situation is one in which the act would reasonably be thought to be highly dangerous, the courts have not hesitated to allow punitive liability upon a finding of gross negligence. *See, Kraus v. Alamo National Bank of San Antonio*, 586 S.W.2d 202 (Tex.Civ.App.— Waco 1979), *affirmed*, 616 S.W.2d 908 (1981) (building under demolition known to exist as dangerous condition); *Wilson N. Jones Memorial Hospital v. Davis*, 553 S.W.2d 180 (Tex.Civ.App.—Waco 1977, writ ref'd n.r.e.) (employment history of hospital orderly not checked prior to allowing him to render medical services to patients); *Claunch v. Bennett*, 395 S.W.2d 719 (Tex. Civ.App.—Amarillo 1965, no writ) (ninety mile per hour automobile race down residential street). The foregoing cases all indicate that the act or omission was somehow related to the ultimate injury in a way which made it fair for the jury to find that the defendant had "decided" to ignore the rights of others even in light of probable and threatened injury to them.

Like the distinction between negligence and gross negligence, no exact line of distinction can be drawn between negligent entrustment and grossly negligent entrustment. However, other cases can provide guidance. The Texas cases that have imposed punitive damages for negligent entrustment have required more than a finding that the driver was unlicensed. Those cases have required evidence that the driver was in fact incompetent or habitually reckless, and the owner knew or should have known that the driver was incompetent or reckless. In those cases habit evi-

dence has been offered to show that the driver was blatantly incompetent or reckless.

In *North Houston Pole Line Corp. v. McAllister,* 667 S.W.2d 829 (Tex.App.— Houston [14th Dist.] 1983, no writ), the employer did not check a driver's prior driving history before hiring him to drive a large truck. Had the employer checked, he would have discovered that the driver had no experience driving a large truck and that he had at least five convictions of traffic violations for speeding in the 18 months before he was employed. *Id.* at 832. Similarly, punitive liability was imposed where an employer allowed a worker to drive a large truck when he had two traffic citations in the previous year, had never driven a truck before, and another employee told a manager several times that the driver was incompetent and should not be "turned loose on the truck." *Montgomery Ward and Co. v. Marvin Riggs & Co.,* 584 S.W.2d 863, 865–6 (Tex.Civ.App.—Austin 1979, writ ref'd n.r.e.). In *Go International, Inc. v. Lewis,* 601 S.W.2d 495 (Tex. Civ.App.—El Paso 1980, writ ref'd n.r.e.), the court upheld a gross negligence finding where Go International allowed an employee to drive a heavy truck that carried explosives. Go International knew that the driver was under age, had six citations for speeding and two for accidents in a similar truck. *Id.* at 500.

On the other hand, in a case where an owner has entrusted a vehicle to an unlicensed driver, one court of appeals has held the evidence is not sufficient to support a gross negligence finding unless there is evidence of other aggravating circumstances making the entrustment highly dangerous. *Webster v. Carson,* 609 S.W.2d 850 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ). We agree with this distinction.

The primary purpose of our statute requiring drivers to have licenses "is to insure a minimum of competence and skill on the part of drivers for the protection of persons who might be injured ... by negligent or reckless operation of motor vehicles on highways." *Munday v. Pirie-*

*Slaughter Motor Co.,* 146 Tex. 314, 206 S.W.2d 587, 589 (1947). However, whether a driver has a license does not determine whether a driver is *in fact* incompetent. Some incompetent drivers are licensed, and some competent drivers are unlicensed. There are a number of reasons why a driver may not have a valid license. One may be a competent driver and fail to apply for a license, or carelessly allow the license to expire, or have it revoked for failure to report an accident. Thus, allowing a person to drive without a license creates an unreasonable risk but does not involve such a high degree of risk that a jury could objectively determine that the defendant did not care whether the driver would injure someone.

■ A trial court may disregard a special issue if there is no evidence to support the jury's answer. Tex.R.Civ.P. 301. In determining whether there is any evidence to support a jury finding of gross negligence, this court must consider all evidence and inferences which tend to support the jury's verdict and reject all contrary evidence and inferences. *Burk Royalty,* 616 S.W.2d at 921.

Robinson, the driver of the truck, moved to Texas from Tennessee. Immediately after he moved to Texas, Steves Industries employed him to drive a pickup truck. A company official testified that it was the policy of the company to obtain the job applicant's driver's license number and check his past driving history before hiring a driver. Robinson testified that his supervisor, Mr. Bannach, told Robinson "to get some driver's license." Bannach did not instruct Robinson about the type of license he should have to drive a heavy truck, and never asked Robinson if he had a valid commercial license. There is no evidence concerning Robinson's driving record before his employment by Steves Industries.

■ A few months later, Steves Industries assigned Robinson to drive a larger truck for which state law requires a commercial operator's license to drive. Tex. Rev.Civ.Stat.Ann. art. 6687(b), § 4A(c) (Vernon Supp.1985). Robinson did not

have a commercial operator's license. After the accident, Robinson continued to drive a similar truck for eight or nine months without a commercial operator's license. A jury could reasonably infer that Steves Industries should have known that Robinson did not have a commercial operator's license.

There is, however, no evidence that Robinson had any prior speeding tickets, had caused any accidents before this one, was not experienced at driving large trucks, that Robinson was in fact an incompetent or reckless driver, or that Steves Industries had actual notice that Robinson was a dangerous driver. There are no facts to indicate that Steve's Industries did not care that entrusting a large truck to Robinson endangered the rights and safety of others. Therefore, we hold that there is no evidence of gross negligence.

The Williamses also contend there is no evidence to support the jury finding that the failure of Renee Williams to have enough gasoline in her car was a proximate cause of the accident. Renee Williams traveled only five miles from her home when her car stalled. After the accident, a fireman at the scene checked the gas tank for a possible fire hazard, but found no gasoline. A wrecker service employee drained the tank through a hole in the gas tank and less than a cupful of gasoline ran out of the tank. An insurance adjuster testified that he examined the car and found no gas in either the gas lines or the carburetor.

■ The jury found Renee Williams negligent for failing to have enough gasoline in her car to make the trip, and found her negligence to be a proximate cause of the accident. The jury also found that her negligence contributed twenty-five percent to the collision. Renee Williams does not attack the negligence finding but contends that as a matter of law her negligence was not a proximate cause of the accident. The two elements of proximate cause are cause in fact and foreseeability. *Nixon v. Mr. Property Management Corp.*, 690 S.W.2d 546, 549 (Tex.1985). We will consider each element separately.

■ The first issue, therefore, is whether there is some evidence that Mrs. Williams' negligence was a cause in fact of the accident. If a negligent act or omission is a substantial factor in bringing about the injury and without which no harm would have occurred, the act or omission is a cause in fact of the injury. *Id.* In other words, the negligent act or omission is not a cause in fact unless "but for the conduct the accident would not have happened." *Kerby v. Abilene Christian College*, 503 S.W.2d 526, 528 (Tex.1973). Had Mrs. Williams had enough gasoline in her car to make her trip, her car would not have stalled in the middle of Interstate 35. A jury could infer that had the car not stalled in the middle of the highway, Robinson would not have collided with it. Thus, we find some evidence that Mrs. Williams' negligence was a cause in fact of the accident.

Finally, we turn to the question of foreseeability. "Foreseeability means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created." *Mr. Property*, 690 S.W.2d at 550. Furthermore, the actor need only anticipate an injury of the same general character as the actual injury:

[I]t is not required that the particular accident complained of should have been foreseen. All that is required is "that the injury be of such a general character as might reasonably have been anticipated; and that the injured party should be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen." [Cite omitted.]

*Carey v. Pure Distributing Corp.*, 133 Tex. 31, 124 S.W.2d 847, 849 (1939) (cited in *Mr. Property*, 690 S.W.2d at 551).

■ On the day of the accident Mrs. Williams knew the route she was taking; therefore, she knew that she would be traveling on a high traffic section of an interstate highway. The jury found that she knew or should have known that she did not have enough gas to make the trip. The

jury could reasonably conclude that a person of ordinary intelligence would anticipate that if his car ran out of gas it might stall on the highway and that a stalled car on a highly traveled section of an interstate highway would create a danger of another vehicle colliding with it. Thus, there is some evidence of foreseeability.

We affirm the judgment of the court of appeals.

RAY, J., dissents.

RAY, Justice, dissenting.

I respectfully dissent. I agree with the majority that Steves Industries was negligent in allowing Robinson to drive without a license. However, I also believe that there is evidence to support the jury finding that equipping Robinson who had no commercial license with a loaded truck was a "heedless and wreckless disregard for the rights of others."

A loaded twenty ton truck is an inherently dangerous machine. In the hands of an unqualified driver, it becomes a death weapon. In order to protect its citizens and to provide safe highways, the Texas legislature has recognized this greater danger and has required that drivers of this heavier, more dangerous vehicle obtain a special commercial driver's license. Tex. Rev.Civ.Stat.Ann. arts. 6687b, §§ 2, 3 (Vernon 1984). To obtain the privilege of driving one of these trucks, a driving test as well a written test must be passed. *Id.* at § 10.

Robinson had no commercial license. Steves Industries knew that Robinson was required to have this special license and knew that Robinson did not have one. Still it allowed Robinson to drive the truck. The issue here is not causation, but Steves Industries' state of mind—its conscious indifference to the rights, welfare, and safety of the persons it affects. *See, Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 922 (1981). Steves Industries continued to equip Robinson with this truck even after the death of the two Williams children.

Taking into consideration the seriousness of the vehicle involved in this negligent entrustment, Steves Industries' acts support the jury finding of gross negligence. I would reverse the court of appeals and the trial court on this point.