VOLCANIC GARDENS MANAGEMENT
CO., INC. d/b/a Volcanic Gardens,
Appellant,

v.

Patricia Yvonne BECK, Appellee.

No. 08–93–00053–CV.

Court of Appeals of Texas,
El Paso.

Oct. 20, 1993.

Barry H. Edwards, El Paso, for appellant.

J. Roberto Oaxaca, El Paso, for appellee.

Before OSBORN, C.J., and KOEHLER
and LARSEN, JJ.

## OPINION

KOEHLER, Justice.

In a suit for personal injuries received on a waterpark ride, the jury found the plaintiff 35 percent negligent and the waterpark 65 percent negligent, resulting in a net judgment of $43,000 including prejudgment interest. In this appeal, waterpark contends in a single point of error that there was no evi-

dence to support the jury's finding of negligence on the part of waterpark and thus the trial court erred in failing to grant its motion for judgment *non obstante veredicto*. We affirm.

## RELEVANT FACTS

During a visit to a water amusement park known as Wet 'N' Wild Water World, owned and operated by Appellant, Volcanic Gardens Management Co., Inc. (hereafter "waterpark"), Patricia Yvonne Beck, Appellee (hereafter "Beck"), was injured while riding down a water slide with her five year old daughter in her arms when another patron described as a young boy, approximately twelve years old, riding down the same slide, came from behind and hit Beck in her back twice, and then fell on top of her as they entered the water at the bottom. Beck and possibly the boy had lost the inner tubes they were supposed to be riding sometime before the accident. Beck felt immediate pain in her back and suffered temporary paralysis from her waist down. At the hospital, she was diagnosed as having sustained multiple transverse fractures to her back. In the trial that followed, the jury found that Beck's injuries were proximately caused 35 percent by her negligence and 65 percent by waterpark's negligence. The waterpark unsuccessfully sought a judgment *non obstante veredicto* on the basis of "no evidence" to support the jury's finding and this appeal ensued.

## STANDARD OF CARE

 This is a premises liability case involving a water amusement park to which the public is invited and pay an admission charge. Persons who enter the waterpark become invitees or patrons to whom the owner or operator of the waterpark, though not an insurer of their safety, owes a duty to exercise ordinary and reasonable care for their safety and protection. *Marek v. Southern Enterprises, Inc.*, 128 Tex. 377, 99 S.W.2d 594, 596 (1936); *Rice v. Amusement Enterprises*, 461 S.W.2d 490, 491 (Tex.Civ.

App.—San Antonio 1970, no writ); James O. Pearson, Jr., J.D., Annotations, Amusements—Assault by Another Patron, 75 A.L.R.3d 441, 454 (1977); Thomas R. Trenkner, J.D., Annotation, Swimming Pool—Lack of Proper Supervision, 87 A.L.R.3d 1032, 1135 (1978); and Thomas R. Trenkner, J.D., Annotation, Swimming Facility—Injury By Third Person, 90 A.L.R.3d 533, 550 (1979).

 When an owner or operator has actual or constructive knowledge of any condition on the premises that poses an unreasonable risk of harm to the patrons, he has a duty to take whatever action is reasonably prudent under the circumstances to eliminate or reduce that risk. *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex.1983). The owner's or operator's negligent act or omission must have been the proximate cause of the patron's injuries. Proximate cause consists of cause in fact and foreseeability. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 313 (Tex.1987). It follows that the owner or operator is liable only for foreseeable injuries to his patrons; that is, those injuries which result from hazards or dangers that could be reasonably foreseen or anticipated; the injuries anticipated, however, need not be the particular injuries received but only of the same general character as the actual injuries. *Williams v. Steves Industries, Inc.*, 699 S.W.2d 570, 575 (Tex.1985).[1]

## THE ALLEGATIONS AND THE JURY FINDING

Beck alleged that her injuries were "a direct and proximate result of the Defendant's negligent failure to protect the Plaintiff from the negligent and dangerous conduct of third parties, that Defendant allowed to occur." She also alleged nine specific acts of negligence, most of which alleged in effect either a failure to properly supervise the other patron or a failure to warn her of the other patron's behavior. The waterpark alleged contributory negligence and sole proximate cause. In response to a broad form

---

1. With the adoption of comparative negligence, the defense of voluntary assumption of risk (doctrine of *volenti non fit injuria*) was abolished in Texas in 1975, with the reasonableness of an injured person's conduct in confronting a known risk to be considered henceforth only as an element of contributory negligence. *Farley v. MM Cattle Company*, 529 S.W.2d 751, 758 (Tex.1975).

negligence submission, the jury found both parties to have been negligent in the previously stated percentages.

## STANDARD OF REVIEW

■ When presented with a "no evidence" challenge, the appellate court should consider only the evidence and reasonable inferences drawn therefrom which, when viewed in their most favorable light, support the jury verdict or court finding. All evidence and inferences to the contrary are to be disregarded. *Best v. Ryan Auto Group, Inc.*, 786 S.W.2d 670, 671 (Tex.1990); *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987); *Alm v. Aluminum Company of America*, 717 S.W.2d 588, 593 (Tex.1986). If there is more than a scintilla of evidence to support the questioned finding, the no evidence point fails. *Stafford*, 726 S.W.2d at 16.

## EVIDENTIARY ANALYSIS

■ Under the foregoing standard, we must now consider only the evidence and reasonable inferences therefrom which, when examined in their most favorable light, support the jury verdict on negligence. Beck testified that she and her daughters had never before the occurrence in question been to a waterpark and had never before been on a water slide, that she was told that she and her daughter would need inner tubes for the ride, but that no one gave any instructions on what to do or what would happen on the ride and no one instructed them on the spacing between persons or advised her not to go down the slide holding her younger daughter in her arms. She testified that the one attendant on duty at the slide said nothing at all to her, inferentially failing to warn her of the hazards connected with the ride, including the possibilities of losing her inner tube and being bumped from behind. She recalled that after starting down the slide with her daughter still in her arms, she lost her inner tube, that she was in a sitting position, feet facing forward, when she was hit from behind by a little boy sitting on the slide with legs crossed without a tube; that she felt immediate pain; that further down the slide, he hit her again; and that as they came off the slide into the water, he fell on top of her

at which time, she had no feeling from her waist down. There is an inference that the boy came down the slide without an inner tube because Beck saw no tube pass by her.

Gerald Marlow, manager of the waterpark, testified that although the ride in question, named "Raging Rapids," had positions for two lifeguards, only one was necessary since he could see the whole ride; that although patrons were required to begin the ride with inner tubes, no effort was made to require them to keep their tubes on the way down or to refrain from bumping or colliding with other patrons; and inferentially, no effort was made to separate the patrons by time intervals so that they would not collide. In fact, he testified that there are "some pools [on the slide] where people do come together" and "[w]ith or without a tube, people are going to come into contact, but at a very slow need [sic]."

Alfredo Diaz, a waterpark lifeguard stationed at the bottom of the ride, testified that he saw a tube come down by itself followed by Beck with a small child in her arms. He also testified that patrons losing their tubes and then coming down later without them happened a lot or once in awhile, that the lifeguard stationed at the top of the ride is supposed to space people out to make sure that they are not going down together, and that he has seen people collide with each other.

We have previously established that the waterpark owed a duty to exercise ordinary care for the safety and protection of its patrons generally and of Beck in particular. We conclude from the foregoing summary that there is more than a scintilla of evidence, together with the reasonable inferences which could be drawn from such evidence, from which the jury could find that the waterpark was negligent with respect to a failure to instruct Beck on the proper and safe use of the ride, to keep the patrons separated by controlling the intervals between them, and to exercise proper supervision over the boy who apparently inflicted Beck's injuries. Proximate cause being a necessary part of the jury question, the jury had at least some evidence from which it could find that but for the negligence of the waterpark, Beck would

not have been injured and that injuries such as the kind Beck sustained were foreseeable because of the bodily contact permitted between patrons.

The point of error is overruled and judgment of the trial court is affirmed.