MONTGOMERY WARD AND COMPANY et al., Appellants,

v.

MARVIN RIGGS COMPANY, Appellee.

No. 12895.

Court of Civil Appeals of Texas, Austin.

Rehearing Denied on Motion for Rehearing July 11, 1979.

Second Motion for Rehearing Denied Aug. 22, 1979.

Tom H. Whiteside, Griffis & Griffis, San Angelo, for appellants.

Richard T. Miller, James A. Childress, Senterfitt, Adams, Miller & Childress, San Saba, for appellee.

SHANNON, Justice.

The opinion of this Court handed down on May 30, 1979, is withdrawn, and the following opinion replaces it.

Appellee Marvin Riggs Company sued appellants Montgomery Ward and Company and its employee Michael Lynn Cross in the district court of San Saba County. Appellee's suit was to recover for damages to appellee's truck sustained in a collision with Ward's truck. After a jury trial, judgment was entered against both appellants for $10,681.00 in compensatory damages and against Montgomery Ward for $5,000.00 in exemplary damages. We will affirm the judgment.

In its trial petition, appellee declared that on May 31, 1977, Cross struck appellee's truck while negotiating a "U-turn" in a Ward's truck on Highway 16 north of San Saba. Appellee pleaded that Cross was guilty of negligence in several respects. Appellee also alleged that Montgomery Ward negligently entrusted the truck to Cross, "an inexperienced, reckless, careless, irresponsible and incompetent" driver, and that under the circumstances the entrustment of the truck to Cross constituted gross negligence.

In response to the court's charge, the jury answered that Cross was guilty of several acts of ordinary negligence that proximately caused the collision. In response to those issues submitting appellee's theory of negligent entrustment, the jury found that Cross was incompetent to drive the truck, that in the exercise of ordinary care Montgomery Ward should have known of Cross' driving incompetence, that Montgomery Ward was grossly negligent in entrusting the truck to Cross, and that Montgomery Ward's act of entrusting the truck to Cross was a proximate cause of the collision. The jury assessed exemplary damages in the sum of $5,000.00.

■ Appellants' points of error two, three, and four are that the jury's answer that Ward was grossly negligent in entrusting the truck to Cross is supported by no evidence or alternatively by insufficient evidence. In considering a "no evidence" point, the reviewing court must reject all evidence contrary to the jury's findings and consider only the facts and circumstances which tend to support those findings. *Renfro Drug Co. v. Lewis*, 149 Tex. 507, 235 S.W.2d 609 (1950). In reviewing factual sufficiency points of error, the court considers all of the evidence to determine whether the findings are so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

■ Cross was twenty at the time of the collision. He had never held a job that entailed driving a truck prior to his employment by Montgomery Ward. Cross testified that he had received in the year preceding his employment by Ward two traffic citations for speeding, one for running a stop sign, and one for failing to yield right of way. Cross testified that no one gave him any special training at Ward for driving a truck. He passed the examination for a commercial operator's license after he had been employed by Ward. Prior to the trip in question, Cross had driven the truck alone only one time. The truck that Cross was operating at the time of the collision was over twenty-eight feet long, weighed ten to twelve thousand pounds, and was difficult to drive because a van behind the cab restricted the driver's vision.

Appellee relied primarily upon the testimony of Skip Sommeral for proof of its negligent entrustment case. Sommeral was a former employee of Montgomery Ward, where he had been a truck driver and delivery man. At the behest of Ward, Sommeral tried to teach Cross how to drive a truck. He encouraged Cross to study the manual so that Cross might obtain his commercial license. On one occasion when Sommeral and Cross were on a run between Rising Star and De Leon, Sommeral permitted

Cross to drive the truck. He also drove two blocks in De Leon. During that trial run, Cross got so "excited on a turn" that Sommeral decided to resume driving.

Sommeral testified that Cross could not judge distances accurately. Cross may have had a vision problem. He had difficulty in learning to use the mirrors of the truck. When Cross was put in a stressful situation he became "flustered and nervous almost to the point where he couldn't do anything." Cross was a nervous driver and a slow reactor. He was also hard of hearing.

Several times Sommeral told John Hopewell, the operating assistant manager of Montgomery Ward in Brownwood, that Cross was "awfully slow to catch on about the truck" and that Cross should not be "turned loose on the truck." Before Sommeral left Ward's employment, he told Hopewell that it would be "a good long" time before Cross could become "really safe" with the truck. He told Hopewell, in addition, that Cross might "not ever be a truck driver because [Cross] was nervous." According to Sommeral, he reported to Hopewell that Cross ". . . wasn't a truck driver at that time [May of 1977] and that it was going to take a considerable time and patience with him to make him a truck driver if he ever became one." One response by Hopewell to such reports of Cross' driving competence was that because Cross had a commercial license, he was qualified to drive a truck.

Hopewell testified that prior to hiring Cross he checked with the Brownwood Police Department with respect to Cross' police record, but did not write to the Department of Public Safety to obtain his driving record. The testimony was that the driving record showed that Cross' operator's license had been suspended but "probated" just prior to his employment by Ward. Hopewell testified that he would not have hired Cross had he known that Cross' driver's license had been suspended.

The court defined gross negligence in the charge as ". . . such an entire want of care which would raise the belief that the act or omission complained of was the result of conscious indifference to the rights and welfare of the person or persons to be affected by it." Appellants preserved no objection to the definition.

Rejecting all of the evidence contrary to the jury's finding of gross negligence and considering only the facts and circumstances that tend to support that finding, *Renfro Drug Co. v. Lewis, supra,* we have concluded that the jury's finding is supported by some evidence. Montgomery Ward made no effort to obtain a copy of the driving record of Cross. Had that record been obtained, Ward would have been apprized of Cross' past driving performance. Cross lacked judgment and suffered from visual and hearing deficiencies. Cross could not handle stressful situations. Sommeral was of the view that Cross was slow in learning how to drive a truck and that, accordingly, he should not be "turned loose" with such a vehicle. There was evidence that Sommeral related these facts to Ward's agent, Hopewell. Hopewell, knowing Cross' minimal driving capabilities, put Cross behind the wheel to make the delivery to San Saba. The "no evidence" point is overruled.

We have considered all of the evidence in the record, some of which has been detailed above, and have concluded the jury's finding of gross negligence is not so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate, supra.* Appellants' "insufficient evidence" points of error are overruled.

■ Appellants' first point of error is that the district court erred in entering judgment awarding exemplary damages against Montgomery Ward because appellee failed to obtain a jury finding of gross negligence on the part of Ward's driver. Appellants rely upon *Restatement of Torts (Second)* § 909(b) as basis for point of error one. Section 909 provides in part that a principal or master is liable for exemplary or punitive damages because of the acts of his agent if "(b) the agent was unfit and the principal was reckless in employing him." Section 909 is concerned, of course,

with the vicarious liability of the master for his agent's acts. Appellants argue, correctly, that the comments and illustrations pertaining to § 909 indicate that the act of the agent must be of a character subjecting the agent to liability for exemplary damages before the master can be held vicariously liable for such damages.

In this appeal, the judgment for exemplary damages against Ward is *not* predicated upon Ward's vicarious liability for the acts of its agent Cross. Instead, the judgment for exemplary damages is based upon favorable jury findings in response to appellee's case in negligent entrustment that established Ward's direct liability for its own gross negligence. Section 909 is not applicable to the facts of this case as submitted to and found by the jury.

We have not found any case *holding* that a corporation, grossly negligent in hiring an incompetent employee, may be held directly liable for exemplary damages to a third party damaged by the ordinary negligence of the incompetent employee. However, several cases contain such statements or reach such results. *Adams Leasing Company v. Knighton*, 456 S.W.2d 574 (Tex.Civ. App.1970, no writ); *Goff v. Lubbock Building Products*, 267 S.W.2d 201 (Tex.Civ.App. 1953, writ ref'd n. r. e.); *Hines v. Nelson*, 547 S.W.2d 378 (Tex.Civ.App.1977, no writ); *Wilson N. Jones Memorial Hospital v. Davis*, 553 S.W.2d 180 (Tex.Civ.App.1977, writ ref'd n. r. e.).

Montgomery Ward was grossly negligent in entrusting the truck to an incompetent driver. Under the facts and circumstances of this case, it was certainly foreseeable that damage to property or person could result from the operation of the truck by such a driver. We are of the view that both the punitive and deterrent purposes of exemplary damages are served by requiring Ward to respond in such damages when its own gross negligence in employing an incompetent driver resulted in the foreseeable collision, even though the driver was guilty in this instance of only ordinary negligence.

With respect to the compensatory damage issues, the jury answered, *inter alia*, that the reasonable cost of repairs to the truck was $3,181.00; the reasonable expense necessarily incurred in arranging for the truck repair was $300.00; and the value of the loss of use of the truck during repair was $2,400.00.

By point of error five appellants claim that there was no evidence to support the jury's answer that the reasonable cost of repairs to appellee's truck was $3,181.00. Appellants' point is directed to only $405.44 of the $3,181.00 sum answered by the jury. The balance, $2,775.56, was stipulated by the parties, and read into evidence, as being the necessary and reasonable cost of repairs to appellee's truck. The items represented by the $405.44 sum were the replacement of a truck tire and a "C.B." radio antenna, repair to the truck trailer, and loss of a tank of fuel.

Marvin Riggs, appellee's president, testified concerning these items. Riggs had been in the trucking business for over thirty years. At the time of the collision, his company was operating nine trucks. Riggs was familiar with the cost of repair or replacement of the items in dispute. He testified that the repair or replacement cost of each of the items was reasonable and that each repair or replacement was occasioned by damage incurred in the collision. Point five is overruled.

In point six appellants claim there is no evidence to support the jury's finding that the reasonable expense necessarily incurred in arranging for the repairs to the truck was $300.00. Marvin Riggs testified without objection that appellee incurred expenses in the sum of $312.00 for hauling the damaged truck and trailer from San Saba to San Angelo. Riggs testified that such expense was a reasonable and necessary charge at the time it was incurred. Point of error six is overruled.

Appellants' point of error ten is that the district court erred in permitting the investigating officer to give opinion testimony with respect to the driving conduct of appellee's driver. Specifically, appellants claim that the officer was not qualified to

give opinion testimony as to whether appellee's driver (1) could have gone safely around Ward's truck to the right; (2) would have overturned if he went to the right; (3) could have done nothing to prevent the accident; and (4) was not exceeding the speed limit.

The investigating officer was Leslie L. Dawson, a "state trooper" employed by the Department of Public Safety for some fourteen years. Dawson received about forty hours instruction in accident investigation. Every two years the officers of the Department receive a refresher course that usually includes accident investigation. Not surprisingly, Dawson declined counsel's invitation to label himself as an "accident reconstruction expert." In his prior appearances as a witness in civil matters, Dawson had testified about ". . . skid marks, distances and this sort of thing."

Counsel for appellee asked the investigating officer, "Mr. Dawson, do you know of anything that Mitchell Riggs could have done to prevent the accident?" Dawson answered that he did not. Appellants' objection was, "I object to the testimony on that [sic] basis that he is not qualified as an expert in this field."

█ Had appellants objected upon the basis that an inquiry as to the absence of fault on the part of appellee's driver was improper, then the objection should have been sustained. Opinion as to fault, or absence thereof, is inadmissible whether the witness be expert or lay. *Flores v. Missouri-Kansas-Texas Railroad Company*, 365 S.W.2d 379 (Tex.Civ.App.1963, writ ref'd n. r. e.); 2 McCormick & Ray, *Texas Law of Evidence*, § 1431 (2d ed. 1956). Counsel's objection, however, only questioned Dawson's qualification as an expert witness. Whether or not Dawson was qualified, his opinion as to absence of fault was still inadmissible. Nevertheless, because the proper ground was not stated in the objection, the district court did not err in overruling the objection.

█ Appellants' objection to the question and answer as to whether appellee's driver was exceeding the speed limit did not preserve any error for review. The objection was, "All right, your honor, I object to this testimony." A valid objection to the offer of evidence is one that names a particular rule of evidence that will be violated by the admission of the evidence. *Walker v. Great Atlantic & Pacific Tea Co.*, 131 Tex. 57, 112 S.W.2d 170 (1938). By objecting generally, appellants waived any complaint they may have had concerning the question and answer.

█ The court's charge submitted no inquiry as to the negligence of appellee's driver in failing to turn his vehicle to the right, and appellants requested no such submission. Accordingly, any error by the court in allowing the opinion testimony concerning the driver's ability or inability to turn to the right was harmless. Tex.R.Civ.P. 434.

█ Appellants' points seven, eight, and nine are "no evidence" and "insufficient evidence" points complaining of the jury's answer concerning the value of appellee's loss of use of the truck during the time of its repair. These points of error are without merit and are overruled.

The judgment is affirmed.