**Bradley RUSSELL and Virgil Russell, Appellants,**

**v.**

**Judith RAMIREZ, Individually, and as the Representative of the Estate of Raul Ramirez, Jr., Appellee.**

No. 14–96–00497–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 10, 1997.

Rehearing Overruled Aug. 28, 1997.

---

1. GOVERNMENT CODE § 312.005.

Gerald M. Birnberg, Houston, for appellants.

Arthur M. Glover, Jr., James B. Lewis, Peter M. Kelly, Houston, for appellee.

Before LEE, AMIDEI and EDELMAN, JJ.

## OPINION

AMIDEI, Justice.

Bradley and Virgil Russell appeal from a judgment for $841,000.00 plus prejudgment and postjudgment interest in favor of Judith Ramirez (appellee or Judith), surviving parent and personal representative of the estate of Raul Ramirez, Jr. (Raul). Appellee sued appellants for the death of her son under the Texas Wrongful Death Statute and the Texas Survival Statute. TEX. CIV. PRAC. & REM. CODE ANN. §§ 71.001—71.011 (Vernon 1986 & Supp.1997); TEX. CIV. PRAC. & REM.CODE ANN. §§ 71.021—71.031(Vernon 1986 & Supp. 1997). After the parties stipulated Raul Ramirez's actual medical and funeral expenses were $245,000.00, the jury awarded Judith Ramirez $750,000.00 for mental anguish and $50,000.00 for Raul's conscious pain and suffering. In six points of error, appellants contend (1) the trial court erred in excluding evidence of Raul's gang affiliation, his drug and alcohol use, and his sale of drugs at school; (2) the trial court erred in admitting photographs of Raul taken many years before his death; (3) the evidence was legally and factually insufficient to sustain the award to Raul's mother for mental anguish; (4) the evidence was legally and factually insufficient to support the jury's finding that Bradley Russell's excessive speed was a proximate cause of Raul's death; (5) the evidence was

legally and factually insufficient to prove Virgil Russell negligently entrusted his automobile to his son, Bradley Russell; (6) the trial court erred in awarding prejudgment interest for mental anguish damages because the award was partly for future mental anguish.

In one cross-point, appellee contends the trial court erred in granting appellants' motion for judgment notwithstanding the verdict (JNOV) and setting aside the jury award for Raul's conscious pain and suffering reducing the judgment by $50,000.00. We affirm.

On November 14, 1992, at approximately 8:00 p.m., sixteen year-old Raul Ramirez, Jr., was one of four passengers in a car driven by James Esquivel (Esquivel). Bradley Russell (Bradley) was driving a car owned by his father, Virgil Russell. When Esquivel ran the stop sign at the intersection of Louella and Fairmont, Bradley collided with Esquivel's car. Expert witnesses testified Bradley's car was going 63 miles per hour and Esquivel's car was going 26 miles per hour at the point of impact. Raul was thrown from Esquivel's car, knocked unconscious, and taken to Hermann Hospital where he died twelve days later.

In point of error one, appellants contend the trial court erred in excluding evidence of Raul's (1) admissions to his mother he sold drugs at school, (2) membership in the Crips gang, and (3) use of drugs and alcohol. Appellants contend this evidence refutes Mrs. Ramirez's testimony that she and her son had a close relationship and her claims of mental anguish result from his death. Appellants argue this evidence goes to Mrs. Ramirez's credibility and tends to show her anguish was because of Raul's bad conduct rather than his death. Appellants' second point of error contends the trial court erred in admitting numerous early photographs of Raul. Asserting that the photographs were not relevant and that "baby pictures added nothing but emotion to the evidence at trial and served only to inflame the passions of the jury," appellants maintain the photos wrongfully "portrayed" Raul as an innocent child, and argue they should have been excluded as unfairly prejudicial under Rule 403

of Texas Rules of Civil Evidence. We disagree.

For the admission or exclusion of evidence to constitute reversible error, the complaining party must show (1) the trial court committed error and (2) the error was reasonably calculated to cause and probably did cause rendition of an improper judgment. TEX.R.APP. P. 81(b)(1); *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex.1989). When the issue is exclusion of evidence, the reviewing court must review the entire record to determine if error occurred. *McCraw v. Maris*, 828 S.W.2d 756, 758 (Tex.1992). Appellants initially contend the trial court erred in excluding evidence of Raul's misconduct. The trial court's decision to admit or exclude evidence is within its sound discretion. *Durbin v. Dal–Briar Corp.*, 871 S.W.2d 263, 268 (Tex.App.—El Paso 1994, writ denied).

Appellants first sub-point of error under point of error one argues the trial court erred in excluding evidence of Raul's drug sales at school. Complaining that *had* they been allowed to establish Raul admitted to his mother that he had been selling drugs at school, the jury *might have concluded* that Mrs. Ramirez was not as "close" to her son as she indicated. Despite this contention, the record shows the trial court *did* allow appellants to question Mrs. Ramirez about her argument with her son the day before his death. On cross-examination Mrs. Ramirez testified that Raul told her "he was accused of selling drugs." Acknowledging Raul was troubled and not a perfect child, Mrs. Ramirez testified that while she was concerned about the drug charges and her son's imminent suspension from school, his legal problems did not make her love him any less.

Appellants' brief recites that trial counsel "was repeatedly precluded from eliciting testimony that he [Raul] *admitted* such activity [selling drugs] to his mother." When appellants' counsel attempted to impeach Mrs. Ramirez with allegedly inconsistent deposition testimony, the trial court sustained appellee's objection that the deposition testimony was consistent with her trial testimony. Appellant's attorney sought to impeach Mrs. Ramirez with testimony found on "page 44,

lines 4 through 8" of her deposition; however, we cannot locate this deposition testimony in the appellate record. To show error, appellants must make an informal or formal bill of exception showing the substance of what was excluded. *Palmer v. Miller Brewing Co.*, 852 S.W.2d 57, 63 (Tex.App.—Fort Worth 1993, writ denied). Without the excluded deposition testimony, appellants cannot show error, nor can they show the error was reasonably calculated to cause and did cause the rendition of an improper judgment. *Id.* Accordingly, we overrule appellants' first sub-point of their first point.

Appellants' first point of error also claims the trial court erred in excluding evidence that Raul was a member of the Crips gang and that he used drugs and alcohol. Mrs. Ramirez testified that, at the time of his death, she was unaware of her son's gang activities or use of controlled substances. After appellee objected on the grounds of relevancy, the trial court did not allow Noe Araiza, to testify about Raul's membership in the Crips or to display a memorial tattoo in honor of his friend. Because there was no evidence Mrs. Ramirez knew Raul used drugs or alcohol, the trial court also excluded Steven Herrera's testimony on this subject.

Appellants argue Raul's gang affiliation, drug and alcohol use refutes Mrs. Ramirez's testimony that she and Raul had a very close relationship. Relying on *Seale v. Winn Exploration Co., Inc.*, appellants contend the excluded evidence was likely to show Mrs. Ramirez's mental anguish arose from Raul's misconduct while he was alive, not solely from his death. 732 S.W.2d 667 (Tex.App.—Corpus Christi 1987, writ denied). In *Seale*, a plaintiff mother appealed a zero jury award for pecuniary loss, loss of society, and past and future mental anguish. *Id.* at 669. The trial court permitted evidence of the mother's pending divorce, her brother-in-law's death, and her management of her incompetent, institutionalized sister's estate. *Id.* at 670. Because these traumatic events occurred at about the time of her son's death, the court of appeals held that

> [a]lthough there is an abundance of evidence that appellant suffered some mental anguish, there is sufficient evidence to support a jury finding that appellant's injury was not a result of Allan Seale's death, but rather the numerous other causes listed above.

*Id.* at 670.

■ The trial court excluded the gang, drug and alcohol evidence as irrelevant, found Mrs. Ramirez had no knowledge of her son's drug and alcohol use or gang membership prior to his death, and found the argument that Raul's misconduct was a source of his mother's mental anguish to be mere speculation; therefore, the *Seales* rationale does not apply. Finally, appellants presented no evidence of, or cross-examined Mrs. Ramirez on the matter to determine if any reason other that her son's death contributed to her mental anguish. *See White v. McElroy,* 350 S.W.2d 249, 251 (Tex.Civ.App.—El Paso 1961, writ ref'd n.r.e.); *see also LaCoure v. LaCoure,* 820 S.W.2d 228, 236 (Tex.App.—El Paso 1991, writ denied) (finding evidence of plaintiff's prior history of drug and alcohol abuse irrelevant in a challenge to her credibility in wrongful foreclosure suit claiming damages for intentional infliction of emotional distress).

Appellants' proposed evidence was irrelevant and would have merely allowed the jury to speculate as to the effect of Raul's alleged misconduct. Finding the trial court did not abuse its discretion in excluding evidence of Raul's alleged gang affiliation and drug and alcohol use, we overrule appellants' first point of error.

■ Appellant's second point of error complains the trial court erred in admitting numerous old photographs of the deceased. Appellants contend the photographs were prejudicial, inflamed the passions of the jury and mislead the jury by falsely depicting the deceased. Further, appellants objected to the photographs as irrelevant and "not accurately portraying this young man as he existed on the day of the accident;" however, appellants' argument is conclusory and they have furnished no authority to support their argument. A party waives a point of error by failing to provide supporting argument or authorities. Tex.R.App. P. 74(f); *McPherson Enterprises, Inc. v. Producers Co–op.*, 827

S.W.2d 94, 96 (Tex.App.—Austin 1992, writ denied). We find the photographs are evidence of the close personal relationship between Raul and his mother, and would support her claims of mental anguish from his death. The trial court is afforded wide discretion in admitting photographs and motion pictures if they are relevant to any issue in a case. *Air Shields, Inc. v. Spears*, 590 S.W.2d 574, 580 (Tex.Civ.App.—Waco 1979, writ ref'd n.r.e.). The trial court did not abuse its discretion in admitting the photographs of Raul into evidence. We overrule appellants' point of error two.

In point of error three, appellants complain there is insufficient evidence to sustain the jury award of $750,000.00 for mental anguish. Appellants argue Mrs. Ramirez required no medical or psychological treatment to deal with her mental anguish or her grief, did not lose any time from work and was never hospitalized because of her anguish.

Appellants contend that mental anguish damages could not be awarded without either "direct evidence of the nature, duration, or severity of [plaintiffs'] anguish, thus establishing a substantial disruption in the plaintiffs' daily routine," or other evidence of " 'a high degree of mental pain and distress' that is 'more than mere worry, anxiety, vexation, embarrassment, or anger.' " *Saenz v. Fidelity & Guar. Ins.*, 925 S.W.2d 607, 614 (Tex. 1996). *See also Parkway v. Woodruff*, 901 S.W.2d 434 (Tex.1995). In *Saenz*, the supreme court found the trial court erred by awarding damages for mental anguish because there was no evidence plaintiff suffered mental anguish or that $250,000.00 would be fair and reasonable compensation. *Id.* The only evidence to support any recovery for mental anguish in *Saenz* was the plaintiff's testimony that she worried a lot about future medical bills. *Id.* There were no questions or testimony specifically addressed to mental anguish. *Id.* at 614.

■ In wrongful death cases, the court's charge shall define mental anguish as the emotional pain, torment, and suffering that the named plaintiff would, in reasonable probability, experience from the death of the family member. *Moore v. Lillebo*, 722 S.W.2d 683, 688 (Tex.1986). Companionship and society shall be defined as the positive benefits flowing from the love, comfort, companionship, and society the named plaintiff would, in reasonable probability, experience if the decedent lived. *Id.* In awarding damages for mental anguish and loss of society and companionship in a wrongful death case, the trier of fact shall be instructed that it may consider (1) the relationship between husband and wife, or a parent and child; (2) the living arrangements of the parties; (3) any absence of the deceased from the beneficiary for extended periods; (4) the harmony of family relations; and (5) common interests and activities. *Id.* In a wrongful death case, it is no longer necessary to prove that mental anguish is physically manifested. *Id.*

In *Moore*, the supreme court found that divorced parents' proof of a family relationship constituted some evidence of mental anguish and required a jury question on the issue of mental anguish caused by the wrongful death of their son. *Id.* at 686–87. Paul Moore, the deceased son, lived with his father while attending high school, spoke with his father often, confided in him and discussed important decisions with him. *Id.* Paul and his mother won joint competitions at National Rifle Association meets. She taught Paul to cook, he helped around the house, and the two carried on regular, written correspondence. *Id.* The supreme court held that this evidence of a family relationship, by itself and without proof of physical manifestation, constituted some evidence of mental anguish. *Id.* at 687–88.

■ In this case, Raul lived with his mother, a single parent, at the time of his death. Mrs. Ramirez testified to numerous instances that demonstrated the closeness of their relationship and noted that she and Raul "did a lot of things together," such as going skating, going to the mall, to movies, and to Astroworld. Thirty-nine photographs of Raul, from early childhood to shortly before his death, were shown the jury. Mother's day cards from Raul to Mrs. Ramirez and a videotape of Raul dancing with his mother at his sister's birthday party shortly before his death were admitted into evidence.

Immediately after the accident, Mrs. Ramirez went directly from work to the hospital and stayed with Raul until he died twelve days later. Even though the medical personnel advised her that Raul was in a coma and would not recover, Mrs. Ramirez talked to him, sat next to him, prayed for him, and thought he would recover. At the time of the trial, Mrs. Ramirez was going to Raul's grave two or three times a week "to go talk to him" and tell him "how I miss him, where he would have been right now, what we could be doing." She places a memorial to Raul in the Bayshore newspaper every year on the anniversary of his death, and testified that she has never stopped grieving for her son.

A rational trier of the facts could find that (1) the relationship between Raul and his mother was very close; (2) Raul, his mother and sister and brother lived happily together in La Porte; (3) Raul never left home for "extended periods;" (4) family relations were in "harmony;" and (5) Raul and his mother shared "common interests and activities." *Moore*, 722 S.W.2d at 688.

Appellants argue there is no evidence of "a substantial disruption of the plaintiff's daily routine" or "a high degree of mental pain and distress" as required by *Saenz* to establish mental anguish. 925 S.W.2d at 614 (citing *Parkway*, 901 S.W.2d at 444). While *Saenz* and *Parkway* permitted an award *only* for mental anguish that causes "substantial disruption in . . . daily routine" *or* "a high degree of mental pain and distress" in any type mental anguish case, *Saenz* and *Parkway* did not involve a claim for mental anguish in a wrongful death case. *Id.* The supreme court in *Parkway* stated that

[w]hen claimants fail to present direct evidence of the nature, duration, or severity of their anguish, we apply traditional "no evidence" standards to determine whether

the record reveals any evidence of "a high degree of mental pain and distress" that is "more than mere worry, anxiety, vexation, embarrassment, or anger" to support any award of damages.

*Id.* at 444.

We find the testimony of Mrs. Ramirez sufficient to establish the existence of "a high degree of mental pain and distress" resulting from the death of her first child, Raul. This distress is "more than mere worry, anxiety, vexation, embarrassment, or anger" and is sufficient to support the award of damages.

The supreme court has held that a jury award should be an amount that would "fairly and reasonably compensate" Mrs. Ramirez for her loss, and while "[r]easonable compensation is no easier to determine than reasonable behavior . . . the law requires factfinders to determine both." *Saenz*, 925 S.W.2d at 614. In this case, the jury found $750,-000.00 would "fairly and reasonably compensate" Mrs. Ramirez for loss of companionship and society, mental anguish, and past and future damages arising from the death of her son. *See Guzman v. Guajardo*, 761 S.W.2d 506, 511 (Tex.App.—Corpus Christi 1988, writ denied) (holding "[t]he valuation of an emotional injury that accrues to the time of trial, using the brief history of the companionship and wrestling with values of intangibles that are not bought and sold, is properly a task for twelve members of the community to manage by a collective decision."); *see also Moore v. Lillebo*, 722 S.W.2d 683, 686 (Tex. 1986) (citing *Connell v. Steel Haulers, Inc.*, 455 F.2d 688 (8th Cir.1972)).[1]

We find the evidence is legally and factually sufficient to support the jury's award for Mrs. Ramirez's mental anguish and loss of Raul's society, and overrule appellants' third point of error.

---

1. The law does not require "parents of a deceased child necessarily make a public exhibition of their grief before or during trial. . . . We are not convinced that mental anguish necessarily manifests itself objectively to the world, nor do grief stricken parents need to offer evidence of physical symptoms such as sleeplessness, weight loss, nervousness, personality changes, and the like. Mental anguish represents a deep inner feeling of pain and hurt often borne in silence. We are satisfied from our reading of the Arkansas cases that parents, such as the Connells, are entitled to have the issue of mental anguish submitted to the jury on the basis of the emotional impact suggested by the circumstances surrounding their loss. We are convinced that assessment of the resulting grief is a task for which juries have traditionally been considered well-suited, and in which they can be properly expected to draw upon their own experience and empathy." *Moore*, 722 S.W.2d at 686.

In their fourth point of error, appellants contend the evidence was insufficient to support the jury's finding of excessive speed at the time of the collision. Appellants argue the "collision avoidance" theory was based on unverified speculation about Bradley Russell's reaction time to apply his brakes before impact (sub-point of error 4(A)). Appellants also contend Thomas Grubbs, appellee's expert witness about the "delta-V" theory, was not qualified to give medical testimony (sub-point of error 4(B)).

Counsel for appellants called Officer Michael Miller as their witness and qualified him as an expert in automobile accident reconstruction. During direct examination, Officer Miller told appellant's counsel that, assuming a speed of 55 miles an hour, he had allotted Mr. Russell "[a] second and a half" reaction time to respond to a perceived danger and had come to that figure based on the individual driving.

■■■ "A party on appeal should not be heard to complain of the admission of improper evidence offered by the other side, when he, himself, introduced the same evidence or evidence of a similar character." *McInnes v. Yamaha Motor Corp., U.S.A.,* 673 S.W.2d 185, 188 (Tex.1984), *cert. denied,* 469 U.S. 1107, 105 S.Ct. 782, 83 L.Ed.2d 777 (1985). Appellants waived the alleged error of the trial court in admitting evidence concerning Bradley Russell's reaction time by introducing this evidence themselves. *Id.* Appellant's sub-point of error 4(A), concerning the admission of reaction time evidence, is overruled.

In sub-point of error 4(B), appellants argue the trial court improperly admitted testimony of appellee's expert witness, Thomas Grubbs, concerning the "delta-V" formula to calculate speed of two bodies at the time of impact. Grubbs, an expert witness in automobile accident reconstruction cases, explained that, in mathematics, "delta" means change, and "V" symbolizes velocity, therefore, "delta-V" means change in velocity. The "delta-V" increases with the speed of a car, and, in this case, the "delta-V" of the Esquivel's Camaro was 33.56. Grubbs testified that if Bradley Russell been driving 55 miles per hour the delta-V force would have

been only 22, and, in his opinion, Raul would not have been killed at the lower delta-V force of 22. Grubbs *did not* testify that the proximate cause of Raul's death was the delta-V force of 33.36. Grubbs did testify that he had never seen a passenger die in a vehicle where the delta-V was lower than 30 and that "my experience has shown that around 30 miles an hour Delta V is where you start seeing the onset of fatal injuries." When appellee asked whether Raul "would have been killed in this accident had Mr. Bradley Russell been going the speed limit," appellants objected because Grubbs, not being a doctor or pathologist, was not qualified to "render that opinion." The trial court overruled appellants' objection and Grubbs opined that Raul would not have been killed at the lower delta-V. Appellants did not present any evidence that the collision was not the cause of Raul's death.

■■■ While Grubbs was qualified, not as a medical expert, but as an expert in factual causation of automobile accidents, "[l]ay testimony is adequate to prove causation in those cases in which general experience and common sense will enable a layman to determine, with reasonable probability, the causal relationship between the event and the condition." *Morgan v. Compugraphic Corp.,* 675 S.W.2d 729 733 (Tex.1984) (plaintiff allowed to testify that her injuries were caused by the release of chemical fumes into her office). The supreme court has held that expert testimony on proximate cause is admissible as long as it is based on proper legal concepts. *Louder v. DeLeon,* 754 S.W.2d 148, 148–49 (Tex.1988) (approving testimony of a state trooper that the defendant's failure to yield the right-of-way was a proximate cause of the accident). The *Louder* court held that

> Tex.R. Civ. Evid. 704 states: "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Recently in *Birchfield,* we adhered to the plain language of that rule to hold that the testimony by the expert in that case on proximate cause was admissible. In so doing, we put to rest the difficult and confusing disputes over whether or not an expert opinion

concerns an ultimate fact [citations omitted]. These disputes were a carryover from the time before Rule 704 was adopted when it was believed that expert testimony on the ultimate issue invaded the province of the jury. *Id.* Most jurisdictions have abandoned this viewpoint because excluding expert testimony on the ultimate issue is unduly restrictive, and the notion that opinions on ultimate facts usurp the jury's function is illogical. *Id.*

*Louder,* 754 S.W.2d at 148–49(*citing Birchfield v. Texarkana Memorial Hospital,* 747 S.W.2d 361, 365 (Tex.1987)). *See also Havner v. E–Z Mart Stores, Inc.,* 825 S.W.2d 456, 459–60 (Tex.1992) (defining cause in fact "as an act or omission that was a substantial factor in bringing about an injury and without which no harm would have occurred," and holding that investigating officers may qualify to testify as experts concerning causation based on their knowledge of underlying facts and their expertise).

▮ Grubbs did not testify to the underlying medical reasons for Raul's death, but only as to whether Bradley Russell's failure to drive at the legal speed limit was a *cause in fact* of Raul's death. Appellants, on the other hand, have presented no evidence to show that the collision was not a *cause in fact* of Raul's death. We find the expert testimony of Thomas Grubbs was admissible as evidence of the cause in fact of Raul's death. *See* TEX.R. CIV. EVID. 704; *see also Havner,* 825 S.W.2d at 458–60. We overrule appellants' sub-point of error four (B).

Point of error five attacks the jury's finding of negligent entrustment, and contends the evidence was insufficient (1) to show Virgil entrusted his automobile to Bradley, and (2) to show that Virgil knew or should have known Bradley was an unsafe, incompetent or unlicensed driver.

▮ To establish negligent entrustment in her suit against Virgil Russell, Mrs. Ramirez must prove: (1) Virgil, the owner of the car, entrusted the vehicle; (2) to an unlicensed, incompetent, or reckless driver; (3) whom Virgil knew or *should have known* was unlicensed, incompetent, or reckless; (4) that the driver, Bradley, was negligent on the occasion in question; and (5) that the

driver's negligence proximately caused the accident (emphasis added). *Schneider v. Esperanza Transmission Co.,* 744 S.W.2d 595, 596 (Tex.1987); *Williams v. Steves Indus., Inc.,* 699 S.W.2d 570, 571 (Tex.1985).

Sub-point of error (1) to point of error five argues that Virgil's interrogatory answer that he "allowed him [Bradley] to drive to Pasadena" does not constitute an "entrustment." Further, appellants maintain that Dana Trahan, not Virgil, gave Bradley permission to drive the car without Virgil's knowledge.

▮ "Express permission is that which is affirmatively stated, while implied permission may be inferred from conduct between the parties in which there is *acquiescence or lack of objection signifying consent.*" *Jamar v. Patterson,* 910 S.W.2d 118, 121 (Tex.App.—Houston [14th Dist.] 1995, writ · denied)(emphasis added). The record contains: (1) Virgil's interrogatory answer acknowledging Bradley had permission to drive the car on the night of the accident; (2) Virgil's testimony that he and his wife, Dana Trahan, jointly owned the car; and (3) Virgil's testimony that Dana had the authority to and did give Bradley permission to use the car. Nothing in the record indicates Virgil ever *denied* Bradley was authorized to use the car, or that he *had no knowledge* Bradley was driving the car on the night of the accident. We find the evidence is legally and factually sufficient to show Virgil gave his son implied permission to use the car on the night of the accident. We overrule sub-point of error (1) to point of error five.

In sub-point of error (2) to point error five, appellants contend there was no evidence, or, in the alternative, legally or factually insufficient evidence that Virgil knew or should have known that his son, Bradley, was an incompetent driver.

When both legal ("no" evidence) and factual ("insufficient" evidence) sufficiency points are raised, we must rule on the no evidence point first. *Glover v. Texas Gen. Indemn. Co.,* 619 S.W.2d 400, 401 (Tex.1981). If the appellate court finds any evidence of probative force to support the verdict, then the no evidence challenge must fail. If the appel-

late court finds some evidence to support the verdict, the court will then review the claim of factually insufficient evidence. *International Piping Sys. Ltd. v. M.M. White & Assoc., Inc.*, 831 S.W.2d 444, 447 (Tex.App.—Houston [14th Dist.] 1992, writ denied). After considering and weighing all the evidence, the court should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

Bradley's driving record revealed six or seven citations for moving violations during the two years preceding the accident. Nine days before the accident, the Texas Department of Safety placed Bradley on probation as a habitual violator. Both Virgil Russell and Dana Trahan, however, testified they were unaware of Bradley's bad driving record, and stated that they would not have loaned the car to anyone they knew to be a bad driver. Virgil never asked his son about his driving record prior to the accident, and had not loaned his car to Bradley since the accident.

While Virgil had no knowledge of Bradley's bad driving record, he did ride with him four years earlier. At that time Virgil commented to his son about his bad driving habits, but never inquired about or checked Bradley's driving record. Based on the evidence before it, the jury found Virgil negligently entrusted the car to Bradley, and found him ten percent (10%) negligent; however, it declined to find him grossly negligent.

As the trier of fact, the jury is the sole judge of the credibility of witnesses and the weight to be given their testimony. In resolving contradictions and conflicts, the jury may choose to believe all, part, or none of the testimony of any one witness in arriving at the finding which it concludes is the most reasonable under the evidence. *Silva v. Enz*, 853 S.W.2d 815, 817 (Tex.App.—Corpus Christi 1993, writ denied). Because Virgil had ridden with his son and attempted to correct Bradley's bad driving habits, the jury could have chosen not to believe Virgil's testimony he did not know Bradley was a bad driver. Likewise, because Dana had loaned Bradley her car two or three times before the accident, the jury could have chosen not to believe her testimony that she did not know Bradley was a bad driver.

Even if Dana and Virgil conclusively established their ignorance of Bradley's driving record, the jury could still have found them liable for negligent entrustment. In *Southwestern Bell Tel. Co. v. Davis*, the Waco court of appeals upheld a jury finding of negligent entrustment when a company hired a driver *without inquiring or checking into his driving record.* 582 S.W.2d 191, 195 (Tex.Civ.App.—Waco 1979, no writ). A routine record check would have revealed that the employee had been convicted of four traffic violations, was at fault in two accidents, and that his driver's license had been suspended three years earlier for habitual traffic violations. Because the company had no actual knowledge of his driving record, the court found that such evidence justified a finding of ordinary negligence but not gross negligence. *Id.* See also *Montgomery Ward and Co. v. Marvin Riggs Co.*, 584 S.W.2d 863, 866 (Tex.Civ.App.—Austin 1979, writ ref'd n.r.e.) (finding failure to check driving record of employee together with other evidence of incompetence sufficient to sustain jury finding of gross negligence in negligent entrustment case).

The jury could have found that a reasonable owner should have inquired into Bradley's driving record and that the failure to make an inquiry about Bradley's driving record constituted negligence. *Southwestern Bell*, 582 S.W.2d at 195; *Montgomery Ward*, 584 S.W.2d at 866. The jury could have also found a reasonable owner *should have known* Bradley was a bad driver and, by failing to check Bradley's driving record and inquire into Bradley's driving habits, Virgil was negligent in entrusting his car to his son. Accordingly, we conclude there is some evidence to support the jury finding and the verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain*, 709 S.W.2d at 176. We overrule sub-point (2) of appellants' fifth point of error.

In their sixth point of error, appellants contend the trial court erred in awarding damages to Mrs. Ramirez for mental anguish and loss of filial consortium without separating past damages from future damages. Appellants maintain that it is error to require them to pay prejudgment interest on the full amount of the judgment. At trial, appellants did not object to the submission of special issue six, which asked the jury to find past and future damages. Appellants brought this complaint to the trial court's attention for the first time post-trial in their motion for new trial and opposition to appellee's motion for judgment. Rule 272 of the Texas Rules of Civil Procedure, requires a party to object to the court's charge, either orally or in writing, before the court reads the charge to the jury. Tex.R. Civ. P. 272; *Kirkpatrick v. Memorial Hosp. of Garland*, 862 S.W.2d 762, 769 (Tex.App.—Dallas 1993, writ denied). If the party does not present the objections to the court before the court reads the charge to the jury, they waive their objection. *Kirkpatrick*, 862 S.W.2d at 769. The record must show that the party presented the objections to the court for its ruling or endorsement. *Id.* The failure of a party to obtain the trial court's ruling and endorsement on the objections to the court's charge does not preserve those objections for appellate review. *Id.* Objections to the court's charge in a motion for a new trial are untimely and preserve nothing for review. *Id.* We find appellants have waived point of error six because they made no objection to the court's charge.

In any case, prejudgment interest on the entire amount of the judgment, including future damages, is recoverable. *C & H Nationwide, Inc. v. Thompson*, 903 S.W.2d 315, 324–28 (Tex.1994), construing article 5069–1.05, § 6(a) (Vernon Supp.1993), Texas Revised Civil Statutes. The supreme court has held that, after September 2, 1987, mandatory prejudgment interest is available in wrongful death cases. We overrule appellants' point of error six.

In one cross-point of error, appellee contends the trial court erred in granting appellants' motion for judgment notwithstanding the verdict (JNOV) reducing the judgment by $50,000.00 for Raul's conscious pain and suffering.

To uphold the granting of a judgment notwithstanding the verdict, an appellate court must determine that no evidence supports the jury's findings. *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 227 (Tex.1990). When reviewing a no evidence point, an appellate court is limited to reviewing only the evidence tending to support the jury's verdict and must disregard all evidence to the contrary. *Id.* If more than a scintilla of evidence supports the jury finding, it must be upheld. *Id.* at 228.

In *Canales v. Bank of California*, the court of appeals found the evidence insufficient to sustain an award for "conscious" pain and suffering of the decedent prior to his death. 316 S.W.2d 314, 318–19 (Tex.Civ.App.—Eastland 1958, writ ref'd n.r.e.). The court of appeals stated:

> The only pain for which there can be a recovery is that which the child consciously experienced, and events that occurred subsequent to a merciful unconsciousness did not prolong nor increase the suffering and are not compensable.

*Id.* at 318 (citing *Sharpe v. Munoz*, 256 S.W.2d 890, 892, (Tex.Civ.App.—San Antonio 1953, writ ref'd n.r.e.)).

In this case, there is no evidence that Raul ever regained consciousness from the time he was taken from the accident scene until he died twelve days later. The only evidence of "conscious" pain and suffering in the record is found in counsel's argument before the trial court concerning the admissibility of Raul's medical records. One of the records contains the following brief statement: "Neurological assessment. Best motor response, 4, withdrawals to pain." No doctors testified as to the meaning of this indication in the record and the medical records are not a part of the record in this appeal. There is no evidence before this court to show that a reaction to painful stimuli can be a "conscious" reaction indicating conscious pain and suffering. Since there is no evidence from any source that Raul ever regained consciousness or displayed any conscious signs of pain or suffering, we find

there is no evidence to sustain the jury's finding that Raul experienced conscious pain and suffering before he died. The trial court's JNOV modifying the judgment to eliminate the $50,000.00 jury award for Raul's conscious pain and suffering was correct. Accordingly, we overrule appellee's cross-point of error and affirm the judgment of the trial court.

LEE, J., concurs in the result only.

EDELMAN, J., dissents without opinion.