Cory Wayne **MAGEE** and Tracey D'Ann Mayo, Individually and as Representatives of the Estate of Douglass Magee and Lois Magee, Appellants

v.

**G & H TOWING COMPANY** and **G & H Towing Inc.,** Appellees.

No. 01–07–00572–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 29, 2012.

Rehearing Overruled Aug. 21, 2012.

---

Benjamin L. Hall III, Elizabeth B. Hawkins, The Hall Law Firm, Kathryn V. Smyser, Bond & Smyser LLP, Houston, TX, for Appellants.

Mike Johanson, Paul Gregory Laughlin, Johanson & Fairless, L.L.P., Sugar Land, TX, for Appellees.

Panel consists of Chief Justice RADACK and Justices HIGLEY and BROWN.

## OPINION ON REMAND FROM THE TEXAS SUPREME COURT

SHERRY RADACK, Chief Justice.

The trial court rendered summary judgment in favor of the appellee-defendant, G & H Towing Company. On appeal, we reversed the summary judgment and remanded to the trial court because one of the appellants-plaintiffs' claims was not addressed in G & H's summary-judgment motion. 312 S.W.3d 807. The supreme court reversed our judgment, holding that G & H's failure to address one of the plaintiffs' claims was harmless because that claim was derivative of another claim, against a different party, on which we affirmed summary judgment. 347 S.W.3d 293, 295. The supreme court then remanded to this Court for consideration of the plaintiffs' other arguments not reached in our earlier opinion. We affirm the trial court's summary judgment in G & H's favor.

## BACKGROUND

The claims in this case arise from an automobile accident involving one of G & H's employees. Defendants William Colson and Joseph Violante were employed by G & H as tugboat quartermasters. They worked on the same tugboat, but they were on different schedules. One would work for several days and then be relieved by the other, who then worked for a similar period. Because the tugboats did not have a regular route that allowed each man to return to the place he began his shift, the men would loan their personal vehicles to one another to drive home at the end of a shift. Whether G & H required or endorsed this practice was disputed, but G & H conceded in the trial court that this practice was widespread and that there was some evidence that the practice was pursuant to an unwritten company policy.

As was their custom, on May 14, 2004, Violante borrowed Colson's vehicle at the end of his shift and drove himself home. Later that night, Violante drove Colson's vehicle to a bar. After leaving the bar, Violante was involved in a collision that killed Douglas and Lois Magee. Violante was convicted on two counts of failure to yield the right of way and intoxication manslaughter.

The Magees' adult children sued Violante, Colson, G & H Towing, and others connected to the bar, asserting theories of negligence, negligent hiring, and negligent entrustment. The claims against G & H were both direct and vicarious. Relevant to this appeal, the Magees asserted that G & H was negligent, through its agent Colson, by entrusting Violante with a vehicle without investigating his driving record. They further contended that Colson had an independent duty to inquire about Violante's competence as a driver, and that G & H was vicariously liable for Colson's negligent entrustment of his vehicle to Violante because Colson was acting within the course and scope of his employment with G & H at the time.

### A. The Trial Court's Judgment and Prior Appellate Proceedings

G & H Towing filed a motion for summary judgment, which the trial court

granted, rendering an interlocutory take-nothing summary judgment in G & H's favor. The trial court later severed the Magees' claims against G & H, rendering that summary judgment in G & H's favor a final, appealable order. A summary judgment in favor of Colson was also severed, making a take-nothing summary judgment in favor of Colson final as well. The Magees appealed both summary judgments to this Court.

In our prior opinion, we affirmed Colson's take-nothing summary judgment, concluding that the trial court correctly determined that there was no evidence of at least one element of the Magees' negligent-entrustment claim against him because Colson did not have an independent duty to investigate Violante's competence as a driver. 312 S.W.3d at 812. The Magees did not appeal our determination in that regard to the supreme court.

In the same opinion, we reversed and remanded the summary judgment favoring G & H Towing. *Id.* at 813. Specifically, we concluded that the trial court erred in rendering a take-nothing summary judgment in favor of G & H because G & H's motion for summary judgment failed to address the Magees' claim that G & H was vicariously liable for Colson's negligent entrustment of his vehicle to Violante.[1] *Id.* at 810–11. Because of this omission, we held the motion to be "legally insufficient as a matter of law in regard to that ground." *Id.* at 811 (citing *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 342 (Tex.1993)). We then reversed the summary judgment and remanded the cause without considering the other grounds raised in the motion for summary judgment. *Id.* at 813.

G & H appealed to the Texas Supreme Court. Because an employer cannot be vicariously liable in tort when its agent or employee has not engaged in tortious conduct, the supreme court concluded that we erred by remanding to the trial court the claim that G & H was vicariously liable for Colson's alleged tortious conduct while simultaneously holding that Colson had not committed a tort. 347 S.W.3d at 297 ("If the defendant has conclusively disproved an ultimate fact or element which is common to all causes of action alleged, or the unaddressed causes of action are derivative of the addressed cause of action, the summary judgment may be affirmed"). The supreme court thus reversed our judgment and remanded the cause to this Court for consideration of the issues we did not reach in our prior opinion.

## B. Issues on Remand

The Magees raised five issues in their prior appeal:

(1) G & H's summary judgment motion did not address all of Plaintiffs' claims as required under *McConnell v. Southside Ind. Sch. Dist.,* 858 S.W.2d 337 (Tex.1993).

(2) Plaintiffs produced legally sufficient evidence that Colson was acting within the course and scope of his employment with G & H when he entrusted the vehicle to Violante, and G & H admitted that the record contained legally sufficient evidence on this issue.

(3) Plaintiff produced legally sufficient evidence with respect to their claims against G & H for vicarious liability for Colson's negligent entrustment of the vehicle to Violante; and there-

---

1. G & H's summary-judgment motion addressed the claim that it was directly responsible for allegedly entrusting the vehicle to Violante through its agent Colson, but the motion did not address the claim that it was vicarious liability for Colson's negligent entrustment.

fore summary judgment with respect to the Plaintiffs' gross negligence claims against G & H, based on the absence of evidence of ordinary negligence, was also improperly granted.

(4) G & H's summary judgment motion contained no other basis upon which summary judgment with respect to Plaintiffs' claims of vicarious liability based upon Colson's negligent entrustment of the vehicle to Violante could properly be entered or affirmed because under the circumstances of this case, Plaintiffs were not required to adduce evidence of proximate cause other than the evidence of proximate cause otherwise required by the elements of a cause of action for negligent entrustment—i.e., that Violante's negligence was a proximate cause of the fatal accident.

(5) Plaintiffs produced legally sufficient evidence of each required element of their causes of action for negligent entrustment against Colson, acting in his capacity as agent of G & H.

The first issue was disposed of by the supreme court's opinion holding that G & H's failure to address all the Magees' claims was harmless, and the second, third, and fourth were resolved by our prior opinion concluding that there was no evidence to support at least one element of the Magees' negligent-entrustment claim against Colson (meaning there was no independent negligent entrustment by Colson during the course and scope of his employment for G & H to be vicariously liable for).

The remaining, unresolved fifth issue—i.e., whether there is evidence to support a direct claim of negligent entrustment against G & H—is not dependent upon whether Colson was individually negligent,

so we address the merits of that claim in this opinion.

## THE PARTIES' ARGUMENTS

In addition to arguing that G & H was vicariously liable, through *respondeat superior,* for Colson's negligent entrustment (a claim foreclosed by our determination that Colson did not negligently entrust his vehicle to Violante), the Magees argue in their brief that "G & H and Colson, in his capacity as agent of G & H, should have known of Violante's record of incompetent and reckless driving because they had a duty to investigate his driving record prior to entrusting Colson's vehicle to him as part of G & H's employee shuttle transportation system." They note that "G & H regularly checked the driving records of all employees who drove company-owned vehicles in connection with the 'shore side' i.e., the dockside activities of the company." In contrast, "G & H took no action to investigate the driving records of employees who would be using the vehicles of their fellow employees as part of the company's employee relief shuttle system." According to the Magees, "[b]ecause the employee shuttle system involved regular use of motor vehicles by company employees for the benefit of the company and the furtherance of its business interests, G & H had a legal duty to investigate the driving records of employees who would regularly use vehicles in connection with this shuttle system."

The Magees contend that G & H had a duty—stemming from the special employer-employee relationship G & H had with Violante—to investigate Violante's driving record beyond whether he was licensed. They also argue that his driving record and criminal record provided legally sufficient evidence of incidents in close enough temporal proximity to the May 2004 wreck

to show that he was an incompetent and reckless driver:

> 11/05/2003—injury accident with citation while license suspended
>
> 06/23/2003—license suspension, no insurance
>
> 05/16/2003—citation for excessively wide turn
>
> 02/20/2003—citation for speeding & no liability insurance
>
> 02/07/2002—injury accident with citation
>
> 05/1997—arrested & charged with reckless driving, speeding, DWI
>
> 11/1994—arrested, charged & pleaded guilty to driving with suspended license & carrying unlawful weapon
>
> 08/1993—charged & acquitted of DWI

Despite these arguments by the Magees about G & H's direct liability for negligent entrustment, G & H insists in its brief that the Magees have abandoned on appeal all direct theories of liability advanced at trial, i.e., that G & H was liable for negligent hiring, negligent supervision, and negligent entrustment. Alternatively, G & H asserts that the Magees' direct negligent-entrustment claims are conclusively defeated by the fact that G & H was not the owner of the vehicle driven by Violante at the time of the accident. They further assert that, as a matter of law, "neither G & H nor Colson (i.e., individually or as alleged agent of G & H) had a duty to investigate Violante's driving record prior to entrusting his vehicle to Violante" because "Violante held a valid driver's license when and at the time he took possession of Colson's vehicle" and because "there is no evidence that Violante was intoxicated when and at the time he took possession of Colson's vehicle."

Finally, G & H argues that "the record reflects that Violante's driving record is not legally sufficient evidence of the alleged incompetence or recklessness that allegedly caused the accident in question." Specifically, it argues that, [i]n this case, there is no evidence of proximate cause because the record of incompetence or recklessness, if any, of Violante was for minor traffic violations, while the cause of the accident was arguably Violante's intoxication." Similarly, G & H contends that Violante's criminal record is devoid of any indication of guilt or fault for moving traffic-related offenses.

## STANDARDS OF REVIEW

We review the district court's summary judgment de novo. *See Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005).

The standard governing a traditional motion for summary judgment is well established: (1) the movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is therefore entitled to summary judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in the nonmovant's favor. *See, e.g., Nixon v. Mr. Property Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). Under the "no-evidence summary judgment" rule, the movant may move for summary judgment if, after adequate time for discovery, there is no evidence of one or more essential elements of a claim or defense on which the nonmovant would have the burden of proof at trial. Tex.R. Civ. P. 166a(i).

When a trial court does not state the basis for its decision in its summary judgment order, we must uphold the order if any of the theories advanced in the motion is meritorious. *Rogers v. Ricane Enters., Inc.,* 772 S.W.2d 76, 79 (Tex.1989).

## NEGLIGENT ENTRUSTMENT

### A. Applicable Law

■ To establish liability under a negligent entrustment theory for injuries arising from a vehicle collision, the plaintiff must show that: (1) the defendant entrusted the vehicle to the driver; (2) that person was an unlicensed, incompetent, or reckless driver; (3) at the time of the entrustment, the defendant knew or should have known that the driver was an unlicensed, incompetent, or reckless driver; (4) the driver was negligent on the occasion in question; and (5) the driver's negligence proximately caused the accident. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 758 (Tex.2007) (citing *Schneider v. Esperanza Transmission Co.*, 744 S.W.2d 595, 596 (Tex.1987)). To sustain such a claim based on a failure to screen, a plaintiff must show that anything found in a background check "would cause a reasonable employer to not hire" the employee, or would be sufficient to put the employer "on notice that hiring [the employee] would create a risk of harm to the public." *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d at 788, 796–97 (Tex.2006). The plaintiff must also prove that the risk that caused the entrustment or hiring to be negligent caused the accident at issue. *Schneider*, 744 S.W.2d at 597.

### B. Analysis

■ G & H specifically challenges the first three elements of the Magees' negligent entrustment claim: (1) whether G & H entrusted a vehicle to Violante, (2) whether Violante was an unlicensed, incompetent, or reckless driver, and (3) whether G & H knew, or should have known that Violante was an unlicensed, incompetent, or reckless driver. In addition, G & H argues that, even if the Magees established the elements of a negligent-entrustment claim, there is a fatal causal disconnect between the Violante's alleged incompetence as a driver and his intoxicated driving that caused the collision and death of the Magees.

■ Whether a duty exists in a negligence case is a question of law for the court. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990). The Magees' theory is essentially that G & H's allegedly requiring Colson to share his personal vehicle with Violante through the company's relief shuttle system is—for purpose of negligent entrustment analysis—akin to G & H entrusting a company vehicle directly to Violante. Under this theory, for the Magees to prevail, we would have to conclude as a threshold matter that an employer has a duty to investigate the driving record of any employee to whom it entrusts a vehicle beyond ascertaining that the employee has a valid driver's license.

■ The Magees recognize that "the law generally declines to recognize a duty to control the conduct of others," but insist that "this general rule does not apply to the situation of an employer and employee." They acknowledge that there are negligent-entrustment cases refusing to impose a duty to investigate a person's driving record beyond ascertaining that the person has a valid driver's license, but point out that these cases do not involve employee-employer relationships. *See Avalos v. Brown Auto. Ctr., Inc.*, 63 S.W.3d 42, 48–49 (Tex.App.-San Antonio 2001, no pet) (no duty of automotive repair company to investigate record of customer and licensed driver to whom loan vehicle was entrusted); *Nobbie v. Agency Rent–A–Car, Inc.*, 763 S.W.2d 590, 591–93 (Tex. App.-Corpus Christi 1988, writ denied) (no duty by rental car company to investigate beyond confirmation of license).

In support of their argument that G & H owed a duty to investigate Violante's

driving record, the Magees cite three cases. *See Russell v. Ramirez*, 949 S.W.2d 480 (Tex.App.-Houston [14th Dist.] 1997, no pet.); *Lorillard v. Davis*, 770 S.W.2d 606 (Tex.App.-Dallas 1989, writ dism'd w.o.j.); *Montgomery Ward & Co. v. Marvin Riggs & Co.*, 584 S.W.2d 863 (Tex.Civ. App.-Austin 1979, writ ref'd n.r.e.). We disagree that these cases support the argument that, on the facts presented in this case, an employer has a duty to investigate its employee's driving record beyond ascertaining that the employee is a licensed driver, absent evidence that the employer is otherwise on notice that the employee might be an incompetent driver.

In *Russell v. Ramirez*, the Fourteenth Court of Appeals affirmed a negligent-entrustment judgment against a mother and father whose son wrecked their vehicle. 949 S.W.2d at 483–83. The son's driving record reflected that he received six or seven traffic citations during the preceding two years. *Id.* at 490. While both parents denied knowing that their son had a "bad driving record," there was evidence that the father had previously ridden with him and "commented to his son about his bad driving habits." *Id.* Thus, in that case there was evidence that the defendant should have known that the driver was incompetent, separate and apart from a review of his driving record itself. The court therefore concluded that, given the evidence, the "jury could have chosen not to believe" the defendants' testimony that they did not know that their son was a bad driver. *Id.* In dicta, the court further observed that even if the defendants conclusively established their ignorance of their son's driving record, the jury could still have found them liable for negligent entrustment. *Id.* The court reasoned that the "jury could have found that a reasonable owner should have inquired into [the son's] driving record and that the failure to make an inquiry about

[the son's] driving record constituted negligence." *Id.* The court stated that the "jury could have also found a reasonable owner should have known [the son] was a bad driver and, by failing to check [his] driving record and inquire into [his] driving habits" the defendants were negligent in entrusting their son with their car. *Id.* We do not agree that *Russell* compels us to hold that an employer necessarily has the duty to inquire about its employees' driving records.

Unlike *Russell*, the other two cases cited by the Magees—*Lorillard v. Davis* and *Montgomery Ward & Co. v. Marvin Riggs & Co.*—do involve employment relationships, but neither case stands for the proposition that an employer always has a duty to investigate its employees' driving records when entrusting them with a vehicle. In *Lorillard*, the Dallas Court of Appeals affirmed a judgment on a gross-negligence finding against an employer based on its entrustment of an employee with a company vehicle. 770 S.W.2d at 611–13. The court held the jury's finding was supported by evidence that the employer entrusted the employee with a vehicle even though (1) the company investigated and discovered, at the time the employee was hired, that he had five moving violations and two accidents on his record, and (2) the company failed to ever again inquire about the employee's driving record after he was hired and given use of a car. *Id.* at 612. In *Montgomery Ward & Co*, the Austin Court of Appeals likewise affirmed a judgment on a gross-negligence finding against an employer based on its entrustment of an employee with a company truck. 584 S.W.2d at 866–68. The court held that the finding was supported by extensive testimony that a supervisor that was charged with teaching the driver at issue how to drive a truck expressed concern to the company that the driver could not judge

distances accurately, had trouble hearing, had trouble using truck mirrors, was slow to learn how to drive, and was too flustered and nervous in stressful situations to do anything. *Id.* at 866. Despite that supervisor's expressed opinion that it would be a "good long" time before the driver could become "really safe" with the truck, if ever, the defendant-employer entrusted the driver with a truck. *Id.* We disagree with the Magees that *Lorillard* and *Montgomery Ward & Co.* impose a legal duty on employers to investigate the driving record of an employee that holds a valid driver's license when there is no evidence that the employer has additional information calling into question that employee's driving ability.[2]

The Magees do not dispute that Violante had a valid driver's license both when he was hired by G & H and at the time Colson entrusted his vehicle to him. The Magees do not argue that there is any evidence that G & H had any actual knowledge that Violante might be an unsafe driver. Because the Magees' negligent entrustment argument against G & H is dependent upon their argument that it had a duty to investigate Violante's driving record beyond ascertaining that he had a valid driver's license, and because we have concluded—on the facts of this case—that G & H did not have a general duty to investigate Violante's driving record absent other indicators that he may be an unsafe driver, we hold that the trial court properly granted summary judgment on the Magees' direct negligent-entrustment claims against G & H.

## CONCLUSION

We affirm the trial court's summary judgment in G & H's favor.

---

**2.** Although not cited by the Magees, we recognize that the Waco Court of Appeals in *Southwestern Bell Telephone Co. v. Davis* stated that evidence of an employer's hiring a driver without checking his driving record can support a finding of ordinary negligent entrustment—but not gross negligence—even if the evidence establishes that the employer had no actual knowledge of the employee's driving record indicating that he was an unsafe driver. 582 S.W.2d 191, 195 (Tex.Civ.App.-Waco 1979, no writ). This was dicta, as the court was reviewing the sufficiency of the evidence to support only a gross-negligence finding.

Moreover, such a broad proposition was not actually supported by the authority the court cited in support. *Id.* (citing *Union Transps., Inc. v. Braun*, 318 S.W.2d 927 (Tex.Civ.App.-Eastland 1958, no writ), *Mundy v. Pirie–Slaughter Motor Co.*, 146 Tex. 314, 206 S.W.2d 587 (1948), and *Hines v. Nelson*, 547 S.W.2d 378 (Tex.Civ.App.-Tyler 1977, no writ)). We accordingly decline to adopt such a sweeping rule. We also note that it is not clear whether, in *Southwestern Bell Telephone v. Davis,* driving was part of the employee's primary responsibilities—a situation we do not opine on today.